# **<u>EXHIBIT 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

MAGAZINE INCORPORAÇÕES S.A., ET AL.[1]

Chapter 15
Case No.:

Debtors in a Foreign Proceeding.

_____/

**DECLARATION OF THE FOREIGN REPRESENTATIVE IN SUPPORT OF**
**CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN PROCEEDING**

---

[1] These companies are Aldeia Shop Investimentos e Participações Societárias Ltda, Allmalls Participações LTDA., Atlas Investiments LTDA, Bertol Aerotáxi Ltda, Bottosso Serviços Administrativos LTDA. – ME, BR.Agroadm Participações Ltda., Brasilwoods Participações LTDA., Brpark Estacionamentos LTDA, Cápsula Eventos LTDA, Centermall Participações LTDA., City Hotéis Administração S.A., Cne Adm Participações Societárias LTDA., Cne Centro Oeste Participações Societárias LTDA, Cne Credit Participações Societárias LTDA., Cne Editora e Gráfica LTDA., Cne Franquias LTDA., Cne Nordeste Participações Societárias LTDA., Cne Norte Participações Societárias LTDA., Cne Participações Societárias LTDA., Cne Properties Empresariais Imobiliárias LTDA., Cne Sudeste Participações Societárias LTDA., Cne Sul Participações Societárias LTDA, Cnetech Participações Societárias LTDA, Condomínio Shopping Gravataí Ltda, Diamond Participações Societárias LTDA, Diamondmall Participações LTDA., E-global Marketplace Participações e Administração de Shopping Center, Egm I Participações LTDA, Egm III Participações LTDA., Egm IV Participações LTDA., Egm V Participações LTDA, Egm VI Participações LTDA, Egm VII Participações LTDA, Fazenda 4R Participações Ltda., Fazenda Graciosa Participações LTDA., Fazenda Jk Participações LTDA, Fazenda Ribeirão Preto Participações LTDA., Fazenda São Carlos Participações S.A, Fullagro Participações LTDA., Ggp Adm Participações Societárias LTDA, Ggp Bh Participações Societárias Ltda, Ggp Bsb Participações Societárias LTDA, Ggp Cj Participações Societárias LTDA., Ggp Cwb Participações Societária LTDA., Ggp Fln Participações Societárias LTDA., Ggp Mia Participações Societárias LTDA., Ggp Ny Participações Societárias LTDA., Ggp Paris Participações Societárias LTDA., Ggp Ssa Participações Societárias LTDA, Globalfinance Participações LTDA, Globalmalls Participações e Administração de Shopping Center S.A., Gmalls Editora e Distribuidora LTDA., Gmcard Participações Ltda., Gmtv Participações LTDA, Go Mall Assessoria Para Shopping Centers LTDA., Gravataí Shop Investimentos e Participações Societárias Ltda, Groenlândia Properties Empreendimentos e Participações S.A., Guepardo Global Properties Participações LTDA., Guepardo Tecnologia e Participações S.A, Haus Mídia e Merchandising LTDA, Imperiale Participações Ltda., Irrbrasil LTDA, Jvl Equity Participações Societárias LTDA, Jvl Participações LTDA., Latan Participações Societárias LTDA., Lorival Rodrigues 5813226010419, M. Invest Planejamento e Administração de Shopping Center S.A., M. Africa Participações Ltda, M. América Participações Ltda, M. Asia Participações Ltda, M Blue Participações Ltda, M. Continental Participações SPE Ltda, M Europa Participações Ltda, M. Fit Participações Ltda., M. Fortaleza Participações Ltda., M Gold Center Participações Ltda, M Infinity Participações Ltda, M. Plaza Participações SPE LTDA., M. Rental Participações Ltda, M. Royal Participações SPE LTDA., Magazine Sul Representações Ltda ME, Mineração Rio Azul LTDA –ME, Mineral Agro Participações S/A, MPAR Participações S. A, Multi Mix Comunicação Corporativa LTDA – EPP, Multihotéis Planejamento e Administração de Hotéis S.A., Nacional Agro Participações Ltda., Olive Fomento Cultural LTDA, Oneagro Participações LTDA., Onemall Participações LTDA., Península Participações Societárias LTDA., Phoenix Floresta Participações LTDA., Sma Participações LTDA., Sul Forte Soluções Imobiliárias Ltda – Me, Topcom Comunicação LTDA., Topmall Participações LTDA., Trademalls Participações LTDA., Twb Participações S.A., União Participações Ltda., Vila Rica Agro Participações Ltda., Wish Gestão de Talentos LTDA.

We, João Adalberto Medeiros Fernandes Júnior and Laurence Bica Medeiros, on behalf of Medeiros & Medeiros Administração Judicial, hereby declare as follows:

1.      We are over the age of 18 and, if called upon, could competently testify as to all matters set forth in this Declaration based upon our own personal knowledge, except for those portions specified as being otherwise. Where matters are based on information supplied to us, those matters are true to the best of my information, knowledge, and belief, and we clearly identify the source of that knowledge.

2.      We are native Portuguese speakers and have sworn the original of this Declaration in Portuguese, as well as the English version that was prepared for filing.

3.      We are licensed Brazilian attorneys and founding shareholders and representatives of Medeiros & Medeiros Administração Judicial.

4.      Medeiros & Medeiros Administração Judicial ("Judicial Administrator" or "Foreign Representative") is the judicial administrator of the Brazilian company Magazine Incorporações S.A. ("Magazine") and other companies in the business group, identified in footnote 1, *supra*, known as M Group (together, the "Debtors"). Magazine was placed into an involuntary liquidation in Brazil by an order of the judge of the Business, Corporate Reorganization and Bankruptcy Court of the Judicial District of Porto Alegre, State of Rio Grande do Sul ("Brazilian Court") dated February 10, 2017 ("Brazilian Proceeding"). A copy of the order (the "Bankruptcy Decree") is attached as **Exhibit A**. On June 24, 2019 and July 15, 2019, the Brazilian Court extended the bankruptcy estate to include the additional Debtors listed in footnote 1, *supra*. Copies of the extension orders are attached as **Composite Exhibit B**.

5.      The Foreign Representative took office as judicial administrator pursuant to an

2

order of the Brazilian Court dated July 26, 2017 ("Appointment Order").[2] A true and correct copy

of the Appointment Order is attached to this Declaration as **Exhibit C**. The Foreign Representative

has acted in the capacity as judicial administrator in the Brazilian Proceeding continuously since

accepting the appointment on July 26, 2017.

6.      We are advised that within the meaning of Chapter 15 of the U.S. Bankruptcy Code:

(i) our firm is the "foreign representative" of the Debtors; (ii) the Debtors' center of their main

interests has, at all times relevant, been in Brazil; and (iii) the Brazilian Proceeding is a "Foreign

Main Proceeding."

**Commencement of Brazilian Proceeding and Appointment of the Judicial Administrator**

7.      On or about July 19, 2016, Rogério Leite Rihan ("Leite") filed a bankruptcy petition

against Magazine Incorporações S.A. asking the Brazilian Court to place Magazine into an

involuntary bankruptcy. Leite claimed that he entered into two contracts with Magazine on

December 10, 2012 and a third contract on September 3, 2014. The contracts involved the sale of

real property in Edifício Comercial Majestic, a residential development project in Brazil. Though

Leite performed his obligations under those contracts, including making the required installment

payments to Magazine, the company did not fulfill its contractual obligations and owed Leite R$

278,993.64. Ex. A at 10.

8.      Magazine contested Leite's bankruptcy petition, claiming that it was not properly

served or notified of the debt proceedings and that Leite was misusing the bankruptcy proceedings

under Brazilian law. The Brazilian Court rejected Magazine's arguments and placed the company

into an involuntary liquidation. Id. at 10-11.

---

[2] By its Order dated February 16, 2017, the Brazilian Court originally appointed another judicial administrator who enlisted my firm's services to assist with administrating the Debtors' bankruptcy estate with the permission of the Brazilian Court. The Brazilian Court subsequently replaced him and appointed my firm as the judicial administrator by Order dated July 26, 2017.

9.      At the time Leite filed the bankruptcy petition against Magazine, the company's "enormous difficulties" were "widely known even by the media, as seen from construction delays and stoppages, as well as from its non-performance of monetary obligations, which resulted in a flood of lawsuits filed by those who, as [Leite], had their rights violated…." Id. at 11.

10.     As another example, Magazine had contracted to deliver two hotels in 2014 and three years later these projects were nowhere near complete.

11.     Public records indicated that, at the time Magazine was placed into involuntary liquidation proceedings, it had been named as a respondent or debtor in approximately two hundred lawsuits in the Judicial District of Porto Alegre. In the Judicial District of Gravataí, Magazine had been named in over one hundred lawsuits. Most of these lawsuits were filed in 2014 and onward. Ex. A at 11.

12.     On February 10, 2017, the Brazilian Court adjudicated Magazine insolvent and placed it into liquidation proceedings. The Brazilian Court ruled, in part, as follows:

> a. A judicial administrator was appointed;
>
> b. Magazine's partners were ordered to submit an updated list of creditors;
>
> c. Creditors were to be notified by public notice;
>
> d. Magazine's assets were to be frozen and collected;
>
> e. The bank accounts and vehicles owned by Magazine's partners were to be frozen; and
>
> f. A forensic accountant and auctioneer were appointed.

Id. at 13-14.

13.     With the permission of the Brazilian Court, the then-judicial administrator, Marcelo Machado Bertolucci, enlisted my firm's assistance in administering Magazine's bankruptcy estate.

4

The Brazilian Court decided to replace him and appoint my firm as the sole judicial administrator on July 26, 2017. Ex. C.

14.     On September 28, 2017, my firm asked the Brazilian Court to extend the Magazine bankruptcy estate to include over 100 additional companies that are all owned or operated by the same group of individuals in a business group called the M Group. We alleged, and the Brazilian Court agreed, that the M Group was created and designed to defraud and conceal assets from creditors. The additional Debtors all counter-argued that they were not part of a business group and that Magazine's bankruptcy estate was already secured by sufficient assets. The Brazilian Court rejected the Debtors' arguments and entered an order extending the bankruptcy estate to include the Debtors listed in footnote 1 on June 24, 2019. See Ex. B. On July 15, 2019, the Brazilian Court entered a second order to add four Debtors that it mistakenly excluded from the June 24, 2019 extension order. Id. at 31.

15.     The Debtors' center of main interests is in Porto Alegre, Brazil, where Magazine's principal place of business and registered office are located. The additional Debtors have been consolidated into the Brazilian Proceeding pending in Porto Alegre, Brazil.

## Factual Background

16.     Magazine was incorporated in 2008 to develop real estate projects mainly in the area of Porto Alegre, Brazil. Magazine grew exponentially in 2010 by raising capital through bank financing and private investors and contracted to build large, high profile real estate projects including shopping centers, hotels, and commercial and residential buildings, including what was supposed to be the tallest residential building in Brazil.

17.     As stated in ¶ 11, *supra*, on February 10, 2017, the Brazilian Court entered the Bankruptcy Decree and adjudicated Magazine insolvent. In reaching its decision, the Brazilian

5

Court considered, among other things, Magazine's failure to comply with its obligations, including substantial delays and stoppages on construction projects the company was involved with and failure to repay bonds. Ex. A. at 11.

18.     Our investigation into Magazine's assets and financial affairs revealed several peculiarities, including:

        a.  Magazine is part of the business group known as the M Group, and all of the companies in M Group, which include the Debtors, are ultimately owned and managed Lorival Rodrigues, by his wife Tania Rodrigues, their son Cyro Santiago Rodrigues, their daughter Camila Santiago Rodrigues, and M Group's General Counsel Norma Botosso (Ex. B at 22);

        b.  Magazine's assets were completely depleted from R$ 148 million in 2013 to R$ 0.00 in 2014 (id.);

        c.  Many of the Debtors were created in or after 2013, some even on the same day, which was around the same time that multiple lawsuits against Magazine and other Debtors were initiated and Magazine's assets were apparently depleted (id.);

        d.  At the time the Brazilian Court entered the Bankruptcy Decree freezing Magazine's accounts, the company barely had any assets (id. at 22-23);

        e.  Neither M Group nor its members seem to have much cash in their respective bank accounts, yet some Debtors in M Group own about R$2 billion in share capital (id. at 23);

        f.  Many of the Debtors share the same registered addresses, phone numbers, capital structures, and articles of incorporation (id. at 22);

g. The Debtors' corporate purposes range from real estate development to forestry, yet they are all owned or managed by each other in a complex ownership scheme (id. at 23-24); and

h. The individuals listed in ¶17(a), *supra*, all own or manage holding companies of non-financial institutions, which include some of the Debtors, most of which hold modest capital and the bulk of their combined share capital concentrated in only a handful of Debtor entities (e.g., JVL Equity Participações Societárias Ltda. holds R$ 1,301,098,000.00 in share capital) (id. at 23-24).

19.     Accordingly, the Foreign Representative asked the Brazilian Court to extend the bankruptcy estate to include the additional Debtors listed in footnote 1, *supra*. The Foreign Representative and the Debtors submitted evidence supporting their respective arguments to the Brazilian Court. Id. at 21-22. The Brazilian Court held an evidentiary hearing on October 1, 2018, during which Lorival Rodrigues, Norma Botosso, and three other witnesses presented testimony. Id. at 22.

20.     Upon consideration of the evidence and testimony submitted by the Foreign Representative and the Debtors, the Brazilian Court found that the evidence "leaves no room for doubting the existence of a group among the [Debtors] and corporate promiscuity among them." Id. at 24. The Brazilian Court concluded without reservation that

[T]he complex business structure was created not only with the intent to divert and/or shield assets, but also, through fictitious share capitals and the self-promotion of the group, to raise funds in the financial market and from individuals, in a scheme of immeasurable proportions that has harmed hundreds of clients, buyers in good faith, and financial institutions that fomented the group's operations, as has been seen in lawsuits against [Magazine] and other group companies.

Id. at 25.

21.    For these reasons, the Bankruptcy Court extended the bankruptcy estate to include the Debtors listed in footnote 1. See id.

### Debtors Have a Domicile, Place of Business or Property in the United States

22.    As the judicial administrator of the Debtors, the Foreign Representative has been charged to investigate the Debtors' business, affairs, and dealings, both in Brazil and worldwide. The investigation has revealed that assets of one or more Debtors are located in the United States.

23.    The Foreign Representative seeks recognition of the Brazilian Proceeding in furtherance of a worldwide pursuit of assets with which to satisfy unpaid claims as well as to investigate, identify, and marshal assets of the Debtors in the United States.

24.    The Foreign Representative has retained Sequor Law. Sequor Law holds in its trust account in this District US$ 1,500 deposited by the Foreign Representative on behalf of and for the benefit of the Debtors, to which funds Sequor Law has no rights of setoff, charging lien, or similar right.

### Judicial Administrator in Foreign Proceedings of the Debtors

25.    As the judicial administrator, the Foreign Representative is a body authorized in the Brazilian Proceeding to administer the liquidation of the Debtors' assets and affairs, and to act as a representative of the Brazilian Proceeding.

26.    As the term is defined in 11 U.S.C. 101(23), the Brazilian Proceeding is a "foreign proceeding" because it is a collective judicial proceeding under a law relating to insolvency or adjustment of debt in which proceeding the Debtors' assets and affairs are subject to the control or supervision of the Business, Corporate Reorganization and Bankruptcy Court of the Judicial District of Porto Alegre, State of Rio Grande do Sul for the purpose of liquidation.

27.    The Brazilian Proceeding is governed by Brazil's Law nº 11.101, of February 9,

8

2005, a Law Regulating Judicial and Extrajudicial Reorganization, and Bankruptcy of Entrepreneurs and Companies, a law relating to insolvency or adjustment of debt.

28.    The Brazilian Court appointed Medeiros & Medeiros Administração Judicial, firm in which we are founding shareholders, as the Judicial Administrator. The Foreign Representative's address in that capacity is:

> Attn: João Adalberto Medeiros Fernandes Júnior and Laurence Bica Medeiros
> Medeiros & Medeiros Administração Judicial
> Av. Dr. Nilo Peçanha, 2900/701
> Torre Comercial Iguatemi Business
> Bairro Chácara das Pedras
> Porto Alegre – Rio Grande do Sul – Brasil

29.    For purposes of this proceeding, the Foreign Representative requests that any correspondence be sent, in addition to the address provided above, to:

> Attn: Leyza Blanco
> Carolina Zambrano Goncalves
> Sequor Law, P.A.
> 1111 Brickell Avenue, Suite 1250
> Miami, Florida 33131

### Parties to any U.S. Litigation in which the Debtors are a Party

30.    The Foreign Representative is not aware of any litigation pending in the United States in which the Debtors are a party.

### Entities Against Whom Provisional Relief is Being Sought Under § 1519 of the Code

31.    The Foreign Representative is not seeking provisional relief under § 1519 of the Bankruptcy Code.

### Statement Identifying Foreign Proceedings With Respect to the Debtors

32.    Other than the Brazilian Proceeding referenced hereinabove, the Foreign Representative is not aware of any other foreign proceedings with respect to the Debtors.

I, João Adalberto Medeiros Fernandes Júnior, on behalf of Medeiros & Medeiros Administração Judicial, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I am a shareholder and representative of Medeiros & Medeiros Administração Judicial, the court-appointed Judicial Administrator for Magazine Incorporações S.A., et al., and that, in such capacity, I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to Magazine Incorporações S.A. and the additional Debtors.

Executed in Porto Alegre, Brazil on 26 August, 2020

João Adalberto Medeiros Fernandes Júnior
for and on behalf of Magazine Incorporações S.A. and additional Debtors – as Judicial Administrator in the Brazilian Proceeding

I, Laurence Bica Medeiros, on behalf of Medeiros & Medeiros Administração Judicial, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I am a shareholder and representative of Medeiros & Medeiros Administração Judicial, the court-appointed Judicial Administrator for Magazine Incorporações S.A., et al., and that, in such capacity, I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to Magazine Incorporações S.A. and the additional Debtors.

Executed in Porto Alegre, Brazil on 26 August, 2020

Laurence Bica Medeiros
for and on behalf of Magazine Incorporações S.A. and additional Debtors – as Judicial Administrator in the Brazilian Proceeding

*Signature Page to Declaration of Foreign Representative in Support of Chapter 15 Petition for Recognition of Foreign Proceeding*

10

# <u>EXHIBIT 1(A)</u>

   

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

306A

COMARCA DE PORTO ALEGRE
VARA DE DIREITO EMPRESARIAL, RECUPERAÇÃO DE EMPRESAS E FALÊNCIAS
Rua Manoelito de Ornellas, 50

---

Processo nº:       001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)
Natureza:          Pedido de Falência
Autor:             Rogério Leite Rihan
Réu:               Magazine Incorporações S.A.
Juiz Prolator:     Juíza de Direito - Dra. Giovana Farenzena
Data:              10/02/2017

**VISTOS.**

ROGÉRIO LEITE RIHAN ajuizou pedido de falência contra a empresa MAGAZINE INCORPORAÇÕES S/A narrando, em síntese, que no dia 10 de Dezembro de 2012 firmou com a ré dois contratos, quais sejam, o "Contrato Particular de Promessa de Compra e Venda de Unidade Imobiliária do Edifício Comercial Majestic" e o "Instrumento Particular de Opção de Condição Especial para Imóvel do Empreendimento denominado Edifício Comercial Majestic". Relatou ter cumprido rigorosamente as obrigações que assumiu nos dois contratos, pagando as parcelas decorrentes dos avençados, vindo a firmar com a ré um outro pacto, em 03 de Setembro de 2014, através do qual a mesma recompraria as unidades em pagamento único. Informou que não houve a devida quitação do valor devido pela ré, montando a dívida em R$ 278.993,64. Asseverou que era caso de falência da ré com escopo no inciso I do artigo 94 da Lei 11.101/05, informando ter realizado o devido protesto da dívida. Requereu, ao final, o benefício da gratuidade judiciária e, no mérito, a citação da ré para elisão do pedido de falência ou decretação da quebra da requerida.

Juntou documentos às fls. 11/157.

Determinada a emenda da inicial às fls. 158/159, manifestou-se o autor às fls. 164/169, juntando documentos às fls. 170/191.

Foi determinada a citação à fl. 192.

Citada (fl. 196), a ré contestou às fls. 206/216 arguindo pre-

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

  

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

liminar de litispendência. No mérito, suscitou a falta de interesse de agir porque o autor estava pretendendo, na verdade, apenas cobrar a dívida que tinha junto à ré, havendo nesse ponto um desvirtuamento da ação de falência. Asseverou, ainda, que o autor era carecedor de ação em razão da ausência de intimação pessoal da ré acerca do protesto efetuado para fins de falência, incidindo à espécie o disposto no inciso VI do art. 96 da LRF. Sustentou que a intimação por edital deveria ser a última via a ser utilizada, informando que tinha endereço certo e determinado, não se mostrando regular a intimação realizada. Impugnou a dívida indicada na inicial, frisando que deveria ser indenizada por perdas e danos, nos termos do art. 101 da Lei de Falências. Requereu a extinção da ação ou, no mérito, a improcedência com ônus.

Juntou documentos às fls. 217/292.

Pela decisão proferida à fl. 293, foi rejeitada a prefacial de litispendência, aberto prazo à réplica e designada audiência de conciliação.

Houve réplica às fls. 296/302, ocasião em que o autor requereu, além da improcedência do pedido de perdas e danos veiculado pela ré e da procedência da ação de falência, que fosse oficiado ao Cartório de Protestos para que o mesmo trouxesse aos autos as informações acerca das tentativas de intimação pessoal da ré.

Em audiência (fl. 304), não houve acordo.

Vieram-me os autos conclusos.

É O RELATÓRIO.

DECIDO.

Trata-se de pedido de falência com fundamento no art. 94, I, da Lei 11.101/2005, regularmente instruído, no qual se impõe o julgamento da lide no estado em que se encontra, uma vez que os fatos alegados já estão suficientemente comprovados pela documentação acostada ao feito.

De início, afasto a alegação de falta de interesse de agir,

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo


ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO







307

porquanto o autor comprovou, de forma cabal, a relação contratual travada com a empresa requerida e o inadimplemento injustificado das obrigações assumidas por esta última, o que resultou num débito de R$ 278.993,64, ou seja, montante deveras superior a 40 salários mínimos, estando, portanto, plenamente tipificada a hipótese e prevista no art. 94, I da Lei de Recuperação e Falências e, consequentemente, configurado o interesse processual.

Relativamente ao mérito, as principais controvérsias instauradas giram em torno da utilização da ação de falência como instrumento de coerção para pagamento da dívida e quanto à validade do protesto efetivado por edital.

Pois bem. Analisando o conjunto probatório carreado aos autos, adianto, desde logo, que não houve desvirtuamento do meio processual empregado e tampouco há que se falar em vício do protesto levado a efeito.

Com efeito, além de comprovar o preenchimento de todos os pressupostos legais para o ingresso do presente pedido de falência, o autor logrou êxito em demonstrar, de forma satisfatória, a situação pré-falimentar em que se encontra a empresa, a qual, nos últimos dois anos, acumulou um expressivo número de ações, conforme listagens de fls. 93/123, inclusive já sendo de amplo conhecimento da mídia as enormes dificuldades enfrentadas pela demandada, externadas em atrasos e paralisações de obras, bem como o descumprimento de obrigações pecuniárias, o que resultou numa enxurrada de ações por parte daqueles que, como o ora autor, restaram lesados em seus direitos, conforme notícias veiculadas nos mais diversos veículos de comunicação (fls. 125/130).

De fato, em uma breve consulta através do Sistema Themis, constato que somente nesta Comarca de Porto Alegre a demandada figura como ré/executada em cerca de duas centenas de ações. Também na Comarca de Gravataí, onde a empresa atua com força, já há mais de uma centena de ações intentadas contra esta. Importante relevar que a massiva maioria destes processos foram distribuídos a partir do ano de 2014, notan-

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

  

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

do-se que tem tomado proporção crescente nos últimos anos.

Por fim, pertinente consignar que este já é o terceiro pedido de falência intentado nesta Vara, e que diante da notória situação de insustentabilidade comercial que a empresa demandada vem enfrentando, chega a configurar-se pífia a alegação de que o presente feito fora intentado apenas com o intuito de coagir esta a efetuar o pagamento do valor devido, ou seja, como supedâneo da ação de cobrança.

De outra parte, não há que se falar em nulidade do protesto de fl. 132, uma vez que fora indicado o correto endereço da ré, conforme cartão CNPJ de fl. 136, e que consta certidão expressa do Oficial de Protesto, detentor de fé pública, de que procedeu a intimação por edital *"por não haver quem se dispusesse a receber a intimação do endereço."*

Ressalto que a própria ré admite tratar-se do seu endereço, tendo referido, à fl. 213, que quem recebe as correspondências é o porteiro do prédio, o qual não poderia receber a intimação. Dessa forma, a própria empresa inviabilizou a efetivação do ato por outra via, não sendo plausível que venha, agora, arguir vício em virtude de ter se realizado por edital.

Sobre o tema, oportuno colacionar os seguintes julgados:

*FALÊNCIA. DUPLICATA. FALÊNCIA. DUPLICATA. PROTESTO ESPECIAL. DESNECESSIDADE. Cuidando-se de título de crédito cujo protesto se ostenta obrigatório como forma de vir a embasar o pleito falencial, não se mostra necessária a sua efetivação pela modalidade especial, consoante a dicção do art. 10 da Lei de Falência. Certidão do Notório que atesta a regularidade do protesto levado a efeito. SENTENÇA DESCONSTITUÍDA. APELO PROVIDO. (Apelação Cível Nº 70007136963, Quinta Câmara Cível, Tribunal de Justiça do RS, Relator: Marta Borges Ortiz, Julgado em 08/04/2004)*

*RECURSO ESPECIAL - NEGATIVA DE PRESTAÇÃO JURISDICIONAL - INEXISTÊNCIA - NOTIFICAÇÃO DO PROTESTO POR EDITAL NO CASO DE RECUSA À APOSIÇÃO DE ASSINATURA NA CARTA REGISTRADA - NECESSIDADE - PEDIDO DE FALÊNCIA APONTANDO A CRÉDITO COM VALOR EXCEDENTE AO EFETIVAMENTE DEVIDO - ANÁLISE DO PLEITO APÓS O DECOTE DO VALOR - ADMISSIBILIDADE - ANÁLISE DA QUESTÃO DA INOCUIDADE DA DUPLICATA DESACOMPANHADA DO COMPROVANTE DE RECEBIMENTO DA MERCADORIA PELO COMPRADOR SOB A ÓTICA DOS ARTS. 1º, § 3º, DO DECRETO-LEI N. 7.661/45, 9º, PARÁGRAFO ÚNICO, E 94, I, DA LEI N. 11.101/2005 - COMANDOS NORMATIVOS INÁBEIS A AMPARAR ESSA DISCUSSÃO - SÚMULA Nº 284 DO STF - APLICAÇÃO - IMPRESCINDIBILIDADE DO COMPROVANTE DE RECEBIMENTO DA MERCADORIA PELO COMPRADOR - INOVAÇÃO RECURSAL - VEDAÇÃO - PEDIDO DE FALÊNCIA SEM PROTESTO ESPECIAL PARA ESSE FIM - ADMISSIBILIDADE - RECURSO ES-*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo


ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO







308-A

*PECIAL PARCIALMENTE CONHECIDO E, NESSE PONTO, PARCIALMENTE PROVIDO. 1. A Corte de origem não incorreu em omissão alguma, conquanto tenha decidido contrariamente ao interesse da parte, motivo pelo qual se repele a indicativa negativa de prestação jurisdicional. 2. A tentativa de notificação do protesto, em primeiro lugar, deve ser feita pessoalmente no endereço fornecido pelo apresentante e contar, especialmente no caso de futuro requerimento de falência, com a identificação do nome do recebedor da intimação. 3. Todavia, quando a notificação pessoal do protesto não logra obter a identificação de quem se recusou a assinar a carta registrada, é de rigor a realização da intimação do protesto por edital como requisito necessário para sustentar o pedido de falência, tudo conforme o art. 15 da Lei n. 9.492/97 e os princípios da preservação e conservação da empresa, como in casu. 4. Como o pedido de falência, sobretudo, deve demonstrar que o devedor ostenta algum dos sinais indicativos de insolvência previstos na legislação falimentar, é viável que o julgador investigue a configuração de algum desses indícios após o decote do valor excessivo, de sorte que não há falar em iliquidez da dívida nessa hipótese. 5. Caso o devedor opte por afastar o pleito falimentar mediante o instrumento do depósito elisivo (sediado no art. 98, parágrafo único, da Lei n. 11.101/05), assiste-lhe a oportunidade de promover esse depósito levando em conta o valor que entende efetivamente devido e de manifestar o seu inconformismo acerca da quantia excedente na sua contestação. (...) 8. É prescindível o protesto especial para a formulação do pedido de falência. 9. Recurso especial parcialmente conhecido e, nessa extensão, provido. (REsp 1052495/RS, Rel. Ministro MASSAMI UYEDA, TERCEIRA TURMA, julgado em 08/09/2009, DJe 18/11/2009)*

De todo o modo, o que se denota dos autos é um nítido intuito da ré de postergar o reconhecimento judicial de uma situação de fato já evidentemente instaurada, qual seja, a escancarada inadimplência de suas obrigações e evidentes sinais de ruína, visto que sua defesa limitou-se a invocar subterfúgios processuais visando a, unicamente, reconhecer vícios de forma, não havendo efetiva resistência quanto a existência do débito e tampouco justificativa para o seu inadimplemento.

Portanto, resulta inequívoca a configuração da hipótese prevista no art. 94, I, da Lei 11.101/2005, no presente caso, dispositivo este que assim dispõe:

*Art. 94. Será decretada a falência do devedor que:*

*I – sem relevante razão de direito, não paga, no vencimento, obrigação líquida materializada em título ou títulos executivos protestados cuja soma ultrapasse o equivalente a 40 (quarenta) salários-mínimos na data do pedido de falência.*

De fato, denota-se dos autos que a parte demandada não apresentou – quiçá comprovou – relevante motivo de direito para o não pagamento da obrigação líquida e exigível, e em nenhum momento referiu não

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

  

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

serem devidos os valores objeto do presente pedido de falência, sendo que, ao não efetivar os respectivos pagamentos, assumiu o risco de ter decretada sua quebra, conforme previsão legal, uma vez que a lei nem mesmo exige o esgotamento de outras vias de cobrança do débito.

Assim, ao não efetivar o depósito elisivo e admitir a obrigação, está demonstrado o estado de insolvência, decorrente do não pagamento do débito. Por outro, ao ser oportunizada audiência para tentativa de conciliação (fl. 304), as partes não chegaram a um acordo, impondo-se, desta forma, a decretação da falência da demandada.

Diante do exposto, demonstrada a impontualidade da empresa ré no pagamento do título executivo extrajudicial formalmente válido, e instruído o pedido com a respectiva certidão de protesto, está comprovado o estado de insolvência decorrente do não pagamento do débito, merecendo êxito a pretensão do demandante na presente ação.

Isso posto, **DECRETO A FALÊNCIA** da sociedade empresária **MAGAZINE INCORPORAÇÕES S/A**, inscrita no CNPJ sob o número 10.359.072/0001-83, declarando-a aberta na data de hoje, às 14 horas, e determinando o seguinte:

a) nomeio Administrador Judicial o **DR. MARCELO MACHADO BERTOLUCCI (OAB/RS 36.581)**, e-mail mbertoluci@terra.com.br, telefones 51.3311.3033 e 51.99961.8351, sob compromisso, que deverá ser prestado em 48 horas, atendendo ao disposto no inciso IX do artigo 99 da Lei 11.101/05;

b) fixo como termo legal da falência a data de **19 de Abril de 2016**, correspondente ao nonagésimo (90º) dia contado do pedido de falência, na forma do inc. II do art. 99 da Lei 11.101/05.

c) intimem-se os sócios da Falida para que cumpram o disposto no inc. III do art. 99 da Lei 11.101/05, no prazo de cinco dias, apresentando a relação atualizada de credores, bem como para que atendam ao disposto no art. 104 do referido diploma legal, sob pena de crime de desobediência, devendo ser requerida previamente a remessa da relação de cre-

64-5-001/2017/331509                001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

   

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

dores por e-mail, no formato de texto;

d) fixo o prazo de quinze (15) dias para habilitação dos credores, na forma do §1º do artigo 7º c/c inc. IV do art. 99, ambos Lei 11.101/05, devendo o Administrador Judicial apresentar a lista de credores para publicação do edital a que alude o §2º do mesmo dispositivo legal. Deve constar no edital o endereço profissional do Administrador para que os credores apresentem as divergências no prazo de 15 dias de que trata o art. §1º do 7º da Lei 11.101/05;

e) suspendam-se as execuções existentes contra a devedora, inclusive as atinentes aos eventuais sócios solidários porventura existentes, exceto as com datas de licitações já designadas, vindo o produto em benefício da massa, ou aquelas onde houve concurso de litisconsortes passivos, que prosseguirão quanto a estes, bem como os executivos fiscais e ações que demandarem por quantias ilíquidas, atendendo ao disposto no art. 6º c/c o inc. V do art. 99, ambos da Lei 11.101/05;

f) cumpra o Sr. Escrivão as diligências estabelecidas em Lei, em especial as dispostas nos incs. VIII, X e XIII, bem como no parágrafo único, todos do art. 99 da Lei 11.101/05, procedendo-se as comunicações e intimações de praxe, bem como oficiando-se as Fazendas Nacional, Estadual e Municipal para que enviem certidões das dívidas eventualmente existentes em nome das falidas;

g) efetue-se a lacração dos estabelecimentos e arrecadem-se os bens da falida, nos termos do inc. XI do art. 99 da Lei 11.101/05;

h) oficie-se à CGJ adotando o Provimento 20/2009, solicitando providências no sentido de ser comunicado aos Registros Imobiliários e Departamento de Trânsito a decretação da falência da sociedade empresária e a indisponibilidade dos bens dos sócios gerentes ou administradores pelo prazo de que trata o §1º do art. 82 da Lei 11.101/05, com base nos incisos VI e VII do art. 99 da referida Lei, bem como para que prestem informações acerca da existência de bens;

i) requisitei, através do Sistema BacenJud, informações

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

  

ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

acerca das contas existentes em nome da falida e remessa dos saldos por-
ventura existentes, fins de providenciar o encerramento das mesmas, na
forma do art. 121 da Lei nº 11.101/05. Aguarde-se resposta.

j) determinei a indisponibilidade de valores e veículos de
propriedade dos sócios através dos Sistemas BacenJud e Renajud, conforme
documentos que seguem.

l) nomeio perito contábil ALFEU JARDIM RIEFFEL[1], e leiloeiro
NAIO DE FREITAS RAUPP[2], devendo este último sugerir datas para alienação
do ativo, oportunamente, atendendo o disposto no art. 140 da Lei Nº
11.101/05.

m) intime-se, pessoalmente, a PFN;

n) custas conforme o inc. IV do art. 84 da Lei de Quebras.

**PUBLIQUE-SE. REGISTRE-SE. INTIMEM-SE.**

Porto Alegre, 10 de fevereiro de 2017.

Giovana Farenzena
Juíza de Direito



Este é um documento eletrônico assinado digitalmente por:
Signatário: GIOVANA FARENZENA
Nº de Série do certificado: 00D1A6E3
Data e hora da assinatura: 10/02/2017 13:07:14

Para conferência do conteúdo deste documento, acesse, na Internet, o endereço http://www.tjrs.jus.br/verificadocs e
digite o seguinte número verificador: 001116009466830012017331509



Confere original eletrônico
www.tjrs.jus.br

---

1 end. Rua dos Andradas, 1560, conj. 1519, Porto Alegre/RS, CEP 90020-010, fones 3013-
6250, 3221-4551, 3013-4251, 9966-1976, e-mail schimitrieffel@yahoo.com.br,
2 rua Otávio Schemes, 3745, bairro Passo do hilário, Gravataí, CEP 94155-000, fones (51)
3431.0404, (51) 3423.3333, (51) 3042.4490 e (51) 9135.7856, e-mail naioraupp@uol.com.br
e naioraupp@terra.com.br

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

I-52762 - 16 JUN 2020

**Tradução nº I-52762**
**Livro nº 630**
**Folha 487**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

---

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

STATE OF RIO GRANDE DO SUL

JUDICIARY BRANCH

JUDICIAL DISTRICT OF PORTO ALEGRE

BUSINESS, CORPORATE REORGANIZATION AND BANKRUPTCY COURT

| Case No.: | 001/1.16.0094668-3 (National Council of Justice (CNJ) No.: 0145675-73.2016.8.21.0001) |
|---|---|
| Type: | Bankruptcy Petition |
| Claimant: | Rogério Leite Rihan |
| Respondent: | Magazine Incorporações S.A. |
| Trial Judge: | Judge Giovana Farenzena |
| Date: | February 10, 2017 |

HAVING SEEN THE CASE RECORDS:

ROGÉRIO LEITE RIHAN filed a bankruptcy petition against MAGAZINE INCORPORAÇÕES S/A stating, in summary, that, on December 10, 2012, he executed two contracts with the respondent: a "Promise of Sale of Real Property Unit in Edifício Comercial Majestic" and a "Private Instrument of Special Condition Option for a Real Property in the Project named Edifício Comercial Majestic." He reported that he strictly performed his obligations under both contracts and paid the installments arising therefrom, and executed a different contract with the respondent, on September 3, 2014, under which the same would repurchase such units for a lump sum. He stated that the amount payable by the respondent was not paid, and its debt amounts to R$278,993.64. He argued that this is sufficient ground for the bankruptcy of the respondent under article 94, item I of Law No. 11.101/05 and stated that he duly notified the default of the debt. Finally, he requested free legal aid and, in the merits, that process be served on the respondent so that it could contest the bankruptcy petition or otherwise be adjudicated bankrupt.

He attached documents on p. 11-157.

The court ordered the amendment to the complaint on p. 158-159, whereupon the claimant responded on p. 164-169 and submitted documents on p. 170-191.

Service of process was ordered on p. 192.

Upon being served with process (p. 196), the respondent submitted its answer on p. 206-216, arguing *lis alibi pendens* as a preliminary issue. In the merits, it argued that the claimant lacks interest in the suit, as he actually intended to merely collect his credit with the respondent, which is a misuse of bankruptcy proceedings. It further argued that the claimant lacks right of action due to the lack of personal notice to the respondent the formal notice of default made for bankruptcy purposes, in which case the provisions of art. 96, item VI of the Reorganization and Bankruptcy Law (LRF) apply. It argued that service by public notice should be a measure of last resort and stated that it had a certain and defined address and, therefore, such service was non-conforming. It objected to the debt indicated in the

Tradução nº I-52762
Livro nº 630
Folha 488

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

complaint, stressing that it should be indemnified for damages under art. 101 of the Bankruptcy Law. It requested the dismissal of the case or, in the merits, the denial of the claim with cost.

It submitted documents on p. 217-292.

The order on p. 293 dismissed the *lis alibi pendens* preliminary issue, granted time for a reply, and scheduled a pretrial conference.

A reply was submitted on p. 296-302, in which the claimant requested, in addition to the denial of the claim for damages sought by the respondent and to the granting of the bankruptcy petition, that an official letter be sent to the Notary Public requesting the same to submit information on the attempts to serve personal notice on the respondent.

At the pretrial conference (p. 304), the parties failed to settle.

The case records were sent to me under advisement.

THIS IS THE BACKGROUND OF THE CASE.

I PROCEED TO DECIDE.

This is a bankruptcy petition based on art. 94, I of Law No. 11.101/2005 and properly supported by evidence. Summary judgment is proper, as the alleged facts are already sufficiently demonstrated by the documentation entered in the case records.

At first, I dismiss the allegation of lack of interest in the suit, as the claimant has conclusively demonstrated his contractual relationship with the respondent and the unjustified default of the obligations assumed by the latter, which resulted in a debt in the amount of R$278,993.64, i.e. over 40 times the minimum salary, which qualifies under the event set forth in art. 94, I of the Reorganization and Bankruptcy Law and, consequently, establishes the interest in the suit.

Regarding the merits, the main disputes established revolve around the use of bankruptcy as an instrument of coercion to pay a debt and the validity of a formal notice of default effected by public notice.

Now, examining the evidence in the case records, I will say from the outset that there was no misuse of the remedy and no defect in the formal notice of default effected.

In fact, in addition to proving the satisfaction of all legal requirements for the filing of this bankruptcy petition, the claimant successfully demonstrated, to the satisfaction of the court, the pre-bankruptcy situation in which the company finds itself, as, in the last two years, it accumulated an impressive number of lawsuits, according to the lists on p. 93-123. The enormous difficulties faced by the respondent are widely known even by the media, as seen from construction delays and stoppages, as well as from its non-performance of monetary obligations, which resulted in a flood of lawsuits filed by those who, as the claimant, had their rights violated, according to news published in the several media outlets (p. 125-130).

Indeed, a brief search on the Themis System shows that, in this Judicial District of Porto Alegre alone, the respondent appears as a respondent/debtor in approximately two hundred lawsuits. Also, in the Judicial District of Gravataí, where the company has major operations, there are already over one hundred lawsuits brought against it. It should be noted that the vast majority of these lawsuits were filed in or after 2014, which shows that such trend has been increasing in recent years.

Finally, it should be noted that this is already the third bankruptcy petition filed with this Court and that, given the notorious situation of commercial unsustainability that the respondent has been facing,



Tradução nº I-52762
Livro nº 630
Folha 489

*TRADUTORA PÚBLICA*

the allegation that this case was only brought with the intention to coerce the latter to pay its debt, that i.e. as a substitute for a collection suit, is ridiculous.

On the other hand, there is no nullity of the formal notice of default on p. 132, as the correct address of the respondent, according to the National Corporate Taxpayers Register (CNPJ) card on p. 136, was indicated, and there is an express certificate from the Notary Public, who has public faith, that service was carried out by public notice "*because there was no one willing to receive the notice at the relevant address.*"

I emphasize that the respondent itself admits that this is its address and stated, on p. 213, that the person who receives correspondence is the building's concierge, who could not receive the notice. Thus, the company itself made the act impossible by any other means, and now it cannot argue that service was defective because it was carried out by public notice.

In this regard, it is useful to cite the following precedents:

*BANKRUPTCY. TRADE BILL, BANKRUPTCY. TRADE BILL. SPECIAL FORMAL NOTICE OF DEFAULT. NO REQUIREMENT. Regarding a negotiable instrument the formal notice of default of which is mandatory in order to support a bankruptcy petition, special notice of default thereof is not required, in accordance with the wording of art. 10 of the Bankruptcy Law.* **Certificate from the Notary attesting to the conformity of the formal notice of default** *JUDGMENT REVERSED. APPEAL GRANTED (Civil Appeal No. 70007136963, Fifth Civil Chamber, RS State Court of Appeals, Reporting Judge: Marta Borges Ortiz, Trial Date: April 8, 2004).*

*SPECIAL APPEAL – DENIAL OF JUDICIAL RELIEF – NON-OCCURRENCE –* **SERVICE OF** *FORMAL NOTICE OF DEFAULT* **BY PUBLIC NOTICE IN THE EVENT OF REFUSAL TO SIGN THE REGISTERED MAIL** *– NECESSITY – BANKRUPTCY PETITION INDICATING A CLAIM IN EXCESS OF THE AMOUNT ACTUALLY DUE – REVIEW OF THE CASE AFTER THE REDUCTION OF THE AMOUNT – ADMISSIBILITY – REVIEW OF THE ISSUE OF THE INEFFECTIVENESS OF A TRADE BILL WHEN NOT ACCOMPANIED BY PROOF OR RECEIPT OF THE GOODS BY THE BUYER UNDER ARTS. 1, PARAGRAPH 3 OF DECREE-LAW NO. 7.661/45, 9, SOLE PARAGRAPH, AND 94, I OF LAW NO. 11.101/2005 – LEGAL RULES INAPPROPRIATE TO INFORM SUCH DISCUSSION – CONSOLIDATED PRECEDENT NO. 284 OF THE FEDERAL SUPREME COURT (STF) – APPLICATION – REQUIREMENT OF PROOF OF RECEIPT OF THE GOODS BY THE BUYER – INNOVATION IN THE APPEAL – PROHIBITION – BANKRUPTCY PETITION WITHOUT SPECIAL NOTICE OF DEFAULT FOR SUCH PURPOSE – ADMISSIBILITY – SPECIAL APPEAL ENTERTAINED IN PART AND, IN THIS PARTICULAR, GRANTED IN PART. 1. The lower Court did not incur in any omission, although it ruled against the interest of the party, which rules out the alleged denial of judicial relief. 2. Service of notice of default should first be attempted personally at the address provided by the applicant and contain, particularly in the event of a future bankruptcy petition, the identification of the name of the individual who is to receive such notice. 3. However,* **when the personal notice of default fails to obtain the identification of the person who refused to sign the registered mail, formal notice of the default must be carried out by public notice as a necessary requirement to support the bankruptcy petition, all in accordance with the provisions of art. 15 of Law No. 9.492/97 and with the principles of preservation and conservation of the company, as in this case.** *4. Given that the bankruptcy petition must, above all, demonstrate that the debtor shows any of the signs of insolvency set forth in bankruptcy law, the court may validly investigate the existence of any of such signs after the reduction of the excess amount so as to rule out any unliquidated debt in such case. 5. If the debtor elects to defeat the bankruptcy petition by depositing in court the amount claimed (under art. 98, sole paragraph of Law No. 11.101/05), he has the right to make such deposit at the amount he understands to be actually due and challenge the excess amount in his answer.... 8. A special notice of default is not required for filing a bankruptcy petition. 9. Special appeal entertained in part and granted to that*

Tradução nº I-52762
Livro nº 630
Folha 490

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

*extent (REsp No. 1052495/RS, Reporting Justice: MASSAMI UYEDA, THIRD PANEL, trial date: September 8, 2009,* Electronic Court Register *(DJe), November 18, 2009).*

Anyway, the case records indicate a clear intent of the respondent to delay the judicial recognition of a factual situation already evidently established, i.e. the obvious default of its obligations and clear signs of ruin, given that its defense was limited to invoking procedural subterfuges aiming solely to recognize formal defects, without any effective rebuttal as to the existence of the debt or justification for its default.

Therefore, it is indisputable that the event set forth in art. 94, I of Law No. 11.101/2005 has occurred in this case, which article provides as follows:

*Art. 94. A debtor shall be adjudicated bankrupt when he:*

*I – Fails to pay, without a relevant legal reason, a liquidated obligation materialized in one or multiple enforceable instruments subject to formal notices of default, of which aggregate sum exceeds forty (40) times the minimum salary as of the date of the bankruptcy petition.*

Indeed, the case records show that the respondent failed to submit, much less demonstrate, any relevant legal reason for the non-payment of a liquidated enforceable obligation and never alleged that the sums underlying the bankruptcy petition are not due. Accordingly, by not making the respective payments, it assumed the risk of being adjudicated bankrupt as provided for in law, given that the law does not even require the exhaustion of other debt collection remedies.

Thus, as it failed to deposit in court the amount claimed and admitted the obligation, the state of insolvency arising from the non-payment of the debt has been demonstrated. On the other hand, at the pretrial conference (p. 304), the parties failed to settle, which imposes the decree of bankruptcy of the respondent.

In view of the foregoing, as the lack of timely payment by the respondent of a formally valid extrajudicial enforceable instrument has been demonstrated, and the petition was supported by the respective certificate of formal notice of default, the state of insolvency arising from the non-payment of the debt has been established, and the claimant's claim in this case deserves to be granted.

Wherefore, I ADJUDICATE MAGAZINE INCORPORAÇÕES S/A, enrolled with the National Corporate Taxpayers Register (CNPJ) under number 10.359.072/0001-83, BANKRUPT, as of the date hereof, at 2:00 P.M., and I further order the following:

a) I appoint MR. MARCELO MACHADO BERTOLUCCI (Brazilian Bar Association/Rio Grande do Sul Chapter (OAB/RS) No. 36.581), email: mbertoluci@terra.com.br, telephones: 51.3311.3033 and 51.99961.8351, as Judicial Administrator, under oath to be sworn within 48 hours, subject to the provisions of article 99, item IX of Law No. 11.101/05;

b) I establish April 19, 2016 as the effective date of the pre-bankruptcy period, which corresponds to the ninetieth (90th) day from the date of the bankruptcy petition, in accordance with the provisions of art. 99, item II of Law No. 11.101/05.

c) I order that the partners of the Bankrupt Company be summoned to comply with the provisions of art. 99, item III of Law No. 11.101/05, within five days, by submitting an updated list of creditors, as well as to comply with the provisions of art. 104 of the same statute, under penalty of contempt. The list of creditors must be previously sent by email in text format;

d) I grant fifteen (15) days for submission of proofs of claim, in accordance with the provisions of article 7, paragraph 1, together with art. 99, item IV, both of Law No. 11.101/05, and I order the

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-52762
Livro nº 630
Folha 491

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

Judicial Administrator to submit a list of creditors for publication of the public notice referred to in paragraph 2 of the same statute. The public notice to be published must contain the business address of the Judicial Administrator for creditors to submit their objections within the time of 15 days set forth in art. 7, paragraph 1 of Law No. 11.101/05;

e) I order the stay of any executions pending against the debtor, including those relating to any of its partners that are joint and severally liable, if any, except those with auction dates already scheduled, the proceeds of which are to inure to the benefit of the estate, or those in which there are joint respondents, which are to proceed against the former, as well as any tax foreclosures and actions claiming unliquidated sums, subject to the provisions of art. 6, together with art. 99, item V, both of Law No. 11.101/05;

f) I order the Clerk to take the measures set forth in Law, particularly in art. 99, items VIII, X, and XIII and sole paragraph of Law No. 11.101/05, by serving the customary notices and summons, by electronic means, to the Federal, State, and Municipal Treasuries requesting them to send certificates of any debts existing in the name of the debtors;

g) I order the sealing of the commercial establishments and collection of the assets of the bankrupt company, in accordance with the provisions of art. 99, item XI of Law No. 11.101/05;

h) I order the issuance of an official letter to the Disciplinary Board of Justice (CGJ) for the purposes of Administrative Act No. 20/2009, requesting measures for advising Real Estate Registries and Departments of Motor Vehicles of the adjudication of bankruptcy of the company and of the freezing of its managing partners for the period set forth in art. 82, paragraph 1 of Law No. 11.101/05, based on art. 99, items VI and VII of such Law, as well as requesting them to provide information on the existence of other assets;

i) I have requested information through the Bacenjud System on any accounts existing in the name of the bankrupt company and remittance of any balances for the closure thereof, in accordance with the provisions of art. 121 of Law No. 11.101/05. Response is pending;

j) I have ordered through the Bacenjud and Renajud System the freezing of any monies and vehicles owned by the partners, in accordance with the documents attached hereto;

l) I appoint ALFEU JARDIM RIEFFEL[1] as forensic accountant and NAIO DE FREITAS RAUPP[2] as auctioneer and I order the latter to suggest dates for the sale of the assets in due time, in compliance with the provisions of art. 140 of Law No. 11.101/05.

m) Notify personally the Office of the Counsel for the Municipal Treasury (PFM); and

n) The court costs are to be paid in accordance with the provisions of art. 84, item IV of the Bankruptcy Law.

PUBLISH. REGISTER. NOTIFY.

Porto Alegre, February 10, 2017.

Giovana Farenzena

Judge

---

[1] Address: Rua dos Andradas, 1560, conj. 1519, Porto Alegre, RS, Postal Code (CEP) 90020-010, phones: 3013-6250, 3221-4551, 3013-4251, and 9966-1976, email: schimitrieffel@yahoo.com.br;
[2] Rua Otávio Schemes, 3745, district of Passo do Hilário, Gravataí, Postal Code (CEP) 94155-000, phones: (51) 3431.0404, (51) 3423.3333, (51) 3042.4490, and (51) 9135.7855, email: naioraupp@uol.com.br and naioraupp@terra.com.br

**Tradução nº I-52762**
**Livro nº 630**
**Folha 492**

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

| Checked against the electronic original **www.tjrs.jus.br** | This is an electronic document digitally signed by: |
|---|---|
| | Signatory: GIOVANA FARENZENA |
| | Serial No. of the certificate: 00D1A6E3 |
| | Date and time of the signature: February 10, 2017 at 1:07:14 P.M. |
| | To check the contents of this document via Internet, access http://www.tjrs.jus.br/verificadocs and type the following verification number: 0011160094668300120173331509 |
| | (barcode) |

Verification Number: 0011160094668300120173331509

64-5-001/2017/331509

001/1.16.0094668-3 (National Council of Justice (CNJ) No.: 0145675-73.2016.8.21.0001)

Stamp: "Judiciary Branch – State of Rio Grande do Sul".

Pages initialed.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, June 16, 2020*

*Receipt No. 23210*

pas/229380.doc

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

# **COMPOSITE EXHIBIT 1(B)**





ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

COMARCA DE PORTO ALEGRE
VARA DE DIREITO EMPRESARIAL, RECUPERAÇÃO DE EMPRESAS E FALÊNCIAS
Rua Manoelito de Ornellas, 50

---

**Processo nº:**     001/1.17.0112049-7 (CNJ:.0169980-87.2017.8.21.0001)
**Natureza:**        Ordinária - Outros
**Autor:**           Massa Falida de Magazine Incorporações S.A
**Réu:**             Agromaua Participações LTDA
                     Aldeia Shop Investimentos e Participações Societárias Ltda
                     Allmalls Participações LTDA.
                     Atlas Investiments LTDA
                     Bertol Aerotáxi Ltda
                     Bottosso Serviços Administrativos LTDA. - ME
                     BR.Agroadm Participações Ltda.
                     Brasilwoods Participações LTDA.
                     Brpark Estacionamentos LTDA
                     Cápsula Eventos LTDA
                     Centermall Participações LTDA.
                     City Hotéis Administração S.A.
                     Cne Adm Participações Societárias LTDA.
                     Cne Centro Oeste Participações Societárias LTDA
                     Cne Credit Participações Societárias LTDA.
                     Cne Editora e Gráfica LTDA.
                     Cne Franquias LTDA.
                     Cne Nordeste Participações Societárias LTDA.
                     Cne Norte Participações Societárias LTDA.
                     Cne Participações Societárias LTDA.
                     Cne Properties Empresariais Imobiliárias LTDA.
                     Cne Sudeste Participações Societárias LTDA.
                     Cne Sul Participações Societárias LTDA
                     Cnetech Participações Societárias LTDA
                     Condomínio Shopping Gravataí Ltda
                     Diamond Participações Societárias LTDA
                     Diamondmall Participações LTDA.
                     E-global Marketplace Participações e Administração de Shopping
                     Center
                     Egm I Participações LTDA
                     Egm III Participações LTDA.
                     Egm IV Participações LTDA.
                     Egm V Participações LTDA
                     Egm VI Participações LTDA
                     Egm VII Participações LTDA
                     Fazenda 4R Participações Ltda.
                     Fazenda Graciosa Participações LTDA.
                     Fazenda Jk Participações LTDA

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ:.0169980-
87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Fazenda Ribeirão Preto Participações LTDA.
Fazenda São Carlos Participações S.A
Fullagro Participações LTDA.
Ggp Adm Participações Societárias LTDA
Ggp Bh Participações Societárias Ltda
Ggp Bsb Participações Societárias LTDA
Ggp Cj Participações Societárias LTDA.
Ggp Cwb Participações Societária LTDA.
Ggp Fln Participações Societárias LTDA.
Ggp Mia Participações Societárias LTDA.
Ggp Ny Participações Societárias LTDA.
Ggp Paris Participações Societárias LTDA.
Ggp Ssa Participações Societárias LTDA
Globalfinance Participações LTDA
Globalmalls Participações e Administração de Shopping Center
S.A.
Gmalls Editora e Distribuidora LTDA.
Gmtv Participações LTDA
Go Mall Assessoria Para Shopping Centers LTDA.
Gravataí Shop Investimentos e Participações Societárias Ltda
Groenlândia Properties Empreendimentos e Participações S.A.
Guepardo Global Properties Participações LTDA.
Guepardo Tecnologia e Participações S.A
Haus Mídia e Merchandising LTDA
Imperiale Participações Ltda.
Irrbrasil LTDA
Jvl Equity Participações Societárias LTDA
Jvl Participações LTDA.
Latan Participações Societárias LTDA.
Lorival Rodrigues 5813226010419
M. Invest Planejamento e Administração de Shopping Center S.A
M. Africa Participações Ltda
M. América Participações Ltda
M. Asia Participações Ltda
M Blue Participações Ltda
M. Continental Participações SPE Ltda
M Europa Participações Ltda
M. Fit Participações Ltda.
M. Fortaleza Participações Ltda.
M Gold Center Participações Ltda
M Infinity Participações Ltda
M. Plaza Participações SPE LTDA.
M. Rental Participações Ltda
M. Royal Participações SPE LTDA.
Magazine Sul Representações Ltda ME

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ:.0169980
87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

 ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Mineração Rio Azul LTDA -ME
Mineral Agro Participações S/A
MPAR Participações S. A
Multi Mix Comunicação Corporativa LTDA - EPP
Multihotéis Planejamento e Administração de Hoteis S.A.
Nacional Agro Participações Ltda.
Olive Fomento Cultural LTDA
Oneagro Participações LTDA.
Onemall Participações LTDA.
Península Participações Societárias LTDA.
Phoenix Floresta Participações LTDA.
Sma Participações LTDA.
Sul Forte Soluções Imobiliárias Ltda - Me
Topcom Comunicação LTDA.
Topmall Participações LTDA.
Trademalls Participações LTDA.
Twb Participações S.A.
União Participações Ltda.
Vila Rica Agro Participações Ltda.
Wish Gestão de Talentos LTDA.

**Juiz Prolator:**  Juíza de Direito - Dra. Giovana Farenzena
**Data:**  24/06/2019

VISTOS.

Trata-se de ação ordinária de extensão dos efeitos da falência ajuizada por **MASSA FALIDA DE MAGAZINE INCORPORAÇÕES S.A.** em face de **AGROMAUA PARTICIPAÇÕES LTDA. E OUTRAS**. Narra a parte autora, em síntese, que a empresa falida atuava na forma de conglomerado econômico, autointitulado M. GRUPO, englobando mais de uma centena de empresas – dentre elas as ora rés –, com atuação em diferentes setores, todas constituídas por Lorival Rodrigues e sua família. Sustenta que a formação do grupo econômico teve por intuito ocasionar confusão patrimonial e ocultação de patrimônio, culminando em um esquema arquitetado para fraudar consumidores e toda a sociedade gaúcha, por meio de projetos extravagantes e promessas de investimentos que não saíram do papel ou que serviram para criar falsos capitais sociais, visando a tomar recursos no mercado financeiro e de particulares. Alega que a própria quebra da falida foi antecedida de planejamento visando ao prévio desvio

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ:.0169980 87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



de ativos, sendo que, de um ano para o outro, o ativo da empresa passou de R$ 148.000.00,00 (2013) para R$ 0,00 (2014). Aduz que o emaranhado de empresas é marcado pela apresentação ao mercado, à imprensa e à sociedade sob a marca "M. GRUPO", tendo discorrido minuciosamente sobre o agrupamento econômico, frisando estarem todas as empresas vinculadas por parentesco e afinidade entre os integrantes dos respectivos quadros societários, com sedes situadas em endereços idênticos e mesmos telefones de contato. Juntou documentos (fls. 52/1006).

Em decisão de fls. 1007/1008v foi parcialmente deferido o pedido de tutela de urgência, a fim de determinar a indisponibilidade de bens, o bloqueio de valores existentes em contas bancárias e a inclusão de restrição sobre os veículos apurados em nome das empresas demandadas e dos sócios destas. No entanto, realizadas as consultas e bloqueios através dos sistemas BacenJud e Renajud, logrou-se bloquear montante total irrisório em nome das empresas demandadas (metade das quais nem mesmo possuía contas bancárias) e alguns poucos veículos, razão pela qual foi determinada a vista dos autos à 3ª Promotoria da Promotoria Especializada em Falências, para conhecimento e adoção das providências que acaso fossem aplicáveis.

Diante do requerimento aviado pela Massa Falida autora às fls. 1099/1106, e à luz da documentação acostada com o mesmo, foi proferida a decisão de fls. 1272/1272v, estendendo-se os efeitos da decisão *initio litis* para o fim de determinar a indisponibilidade total do FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES ATLANTIS (CNPJ n.º 15.734.351/0001-01).

Não obstante o retorno negativo dos AR's de citação, as empresas requeridas – com exceção da ré BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. –, compareceram espontaneamente nos autos através da contestação conjunta apresentada às fls. 1377/1395, onde alegaram, em suma, que em virtude da desaceleração da economia no primeiro trimestre de 2014, a falida Magazine Incorporações não veio a realizar novos lançamentos e que, embora tivesse sido aprovado o seu

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169980 87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

 ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



maior projeto, o Edifício Majestic, o empreendimento foi embargado gerando o equivalente a R$ 14.000.000,00 em distratos, tendo este sido o motivo de sua não realização. Relacionaram os projetos concluídos e entregues pela falida. Discorreram sobre a organização social das empresas e não caracterização de grupo econômico, aduzindo a inexistência de unidade diretiva comum. Ao final, pugnaram pela improcedência da demanda, aduzindo que a ação falimentar já está amplamente caucionada com bens suficientes ao adimplemento de todas as obrigações da Massa Falida. Juntaram documentos (fls. 1396/2632).

Houve réplica às fls. 2814/2827.

Citada, a corré BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. e sua titular NORMA BOTOSSO (não arrolada no polo passivo) também apresentaram contestação, alegando a ilegitimidade passiva, tendo em vista que a pessoa jurídica foi criada exclusivamente para fins de prestação de serviços jurídicos ao M. GRUPO.

Em face da referida contestação também foi apresentada réplica às fls. 4193/4207.

Às fls. 4267/4273 foi comunicado o provimento do agravo de instrumento interposto pela parte BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA., para determinar a liberação de valor depositado em conta poupança da agravante até o limite de 40 (quarenta) salários-mínimos, conforme art. 833, X do CPC, o que restou atendido às fls. 4274 e 4383.

Foi proferido despacho saneador, às fls. 4362/4363, com a intimação das partes para que informassem se tinham outras provas a produzir.

Em 01/10/2018 foi realizada audiência de instrução (fls. 4616/4634), em que LORIVAL RODRIGUES e NORMA BOTOSSO prestaram depoimento pessoal, bem como houve a oitiva de 3 testemunhas, tendo, após isto, sido declarada encerrada a instrução, com a abertura de prazo para a apresentação de memoriais.

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169900-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

 ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Foram apresentados memoriais pela Massa Falida, às fls. 4663/4675; pela ré BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA., às fls. 4676/4687; pela ré JVL PARTICIPAÇÕES SOCIETÁRIAS LTDA, às fls. 4688/4702; pelas rés ATLAS INVESTIMENTOS LTDA., PENÍNSULA PARTICIPAÇÕES SOCIETÁRIAS LTDA. e GGP MIA PARTICIPAÇÕES SOCIETÁRIAS LTDA., às fls. 4703/4722.

Aberta vista ao MP, este exarou o parecer final de fls. 4724/4730, opinando pela total procedência da demanda.

Vieram-me os autos conclusos.

É O RELATÓRIO. DECIDO.

Cuida-se de analisar pedido de extensão dos efeitos da falência ajuizado por **MASSA FALIDA DE MAGAZINE INCORPORAÇÕES S.A.** em face de **AGROMAUA PARTICIPAÇÕES LTDA. E OUTRAS 104 EMPRESAS**, que, conforme sustentou a parte autora, formavam, juntamente com a falida, o conglomerado denominado "M. GRUPO".

No mérito, adianto ser caso de procedência da ação.

Com efeito, já com a petição inicial foi acostada farta documentação a atestar a estreita vinculação existente entre as empresas em questão, externada, de forma objetiva, nas seguintes situações:

1) a atuação que, embora diversificada, desenvolvia-se sob unidade diretiva comum, como amplamente divulgado no site www.mgrupo.com.br (fls. 62/71) e na imprensa (fls. 72/91);

2) a composição societária concentrada em 5 pessoas (LORIVAL RODRIGUES, TANIA RODRIGUES, CYRO SANTIAGO RODRIGUES, CAMILA SANTIAGO RODRIGUES e NORMA BOTOSSO), sendo 4 da mesma família (pai, mãe e os dois filhos);

3) a utilização dos mesmos endereços sede e mesmos números telefônicos de contato, tudo conforme comprovantes de inscrição e situação cadastral junto ao Cadastro Nacional da Pessoa Jurídica (CNPJ), quadros societários e contratos sociais que igualmente instruíram a peça

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169930 87.2017.8.21.0001)

6

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

portal.

Além disso, também restou demonstrado que a abertura da maioria das empresas rés deu-se a partir de 2013 (fls. 34/37), inclusive muitas delas abertas no mesmo dia, coincidindo justamente com a época em passaram a se proliferar as ações judiciais em face das empresas pertencentes ao grupo econômico em questão (fls. 115/495), sendo também o ano em que houve drásticas alterações nas contas da falida em um curtíssimo intervalo de tempo (que de um ativo de R$ 148 milhões declarado em 2013 passou a R$ 0,00, em 2014 – conforme DIPJ de fls. 496/568).

Em contrapartida, constatou-se o crescimento vertiginoso do conglomerado e do capital social das empresas subsidiárias e coligadas, que somados chegam à vultosa quantia de R$ 2 bilhões, situações estas devidamente retratadas no presente feito e que configuram indicativos hábeis a confortar as alegações de que houve atuação conjunta para, em flagrante desvio de finalidade, fraudar clientes e credores mediante confusão patrimonial e ocultação de patrimônio.

E justamente por isso, restaram deferidas as medidas acautelatórias liminarmente postuladas, inclusive de bloqueio dos valores que porventura fossem encontrados nas contas das demandadas. Todavia, para a surpresa da signatária, logrou-se bloquear valores ridiculamente ínfimos (fls. 1020/1028), não obstante o expressivo número de empresas aqui demandadas (mais de uma centena), e o fato de algumas delas possuírem capital social milionário registrado junto aos órgãos públicos.

O desdobramento do processo, por sua vez, apenas veio a corroborar a argumentação posta na exordial, mostrando-se, no ponto, oportuno transcrever as considerações postas pela representante do Ministério Público em seu parecer final, as quais, em conjunto com a tabela acostada às fls. 4727/4730, demonstram de forma clara, organizada e sintética a configuração do grupo econômico alegado e as peculiaridades apuradas com relação ao mesmo a indicar a ocorrência do desvio de

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



finalidade e confusão patrimonial que alicerçaram a propositura da presente ação:

> "As 31 empresas marcadas em laranja tem objeto social relacionado a imóveis, sendo administradas por Lorival Rodrigues, coadjuvado ou não por seu filho Cyro Santiago Rodrigues. Duas delas, M. América Participações Ltda. e M. Continental Participações Spe Ltda., têm a Magazine Incorporações S..A. como sócia. Não pode haver dúvida de que fazem parte do M. Grupo, até mesmo porque é isso que se depreende do depoimento de Lorival Rodrigues em juízo.
>
> Das 11 empresas em azul-escuro, 9 têm como objeto social *"atividades de apoio à produção florestal"*, sendo todas dirigidas por Lorival Rodrigues e Cyro Santiago Rodrigues, com o capital social de R$5.000,00 e o endereço na Av. Brigadeiro Faria Lima, 1912, Jardim Paulistano, São Paulo. E ainda por cima, em todas figuram como sócias ou acionistas as requeridas Mineral Agro Participações S.A., BR.Agroadm Participações S.A. e/ou M. Invest Planejamento e Administração de Shopping Center S.A., sendo as duas primeiras capitaneadas por Camila Santiago Rodrigues e Norma Bottosso e a última por Lorival Rodrigues de Cyro Santiago Rodrigues.
>
> As outras 2 empresas em azul-escuro, Imperiale Participações Ltda. e União Participações Ltda., atuam no *"cultivo de outras plantas de lavoura temporária não especificadas anteriormente"*, tendo como administrador Lorival Rodrigues e como sócias as mesmas Mineral Agro Participações S.A. e BR.Agroadm Participações S.A. Essas circunstâncias, bem como o fato de terem sua sede na AV. Carlos Gomes, 141, Edifício Antares Center, Conj 311, Auxiliadora, Porto Alegre, indicam fazerem parte do grupo, não obstante o objeto social diverso.
>
> Prosseguindo, temos as 13 empresas marcadas em azul-claro. Lorival Rodrigues e Cyro Santiago Rodrigues estão à testa de todas elas. Seus diversos objetos sociais não nos devem enganar quanto à inclusão dessas pessoas jurídicas no M. Grupo, o que é evidente. Os endereços e a titularidade não podem levar a outra conclusão: são todas integrantes do grupo econômico tal como sustenta a inicial. A corroborar tal assertiva, a participação de M. Invest Planejamento e Administração de Shopping Center S.A. e Globalmalls Participação e Administração de Shopping Center S.A. (marcadas em laranja na tabela) no capital social de 10 dessas empresas, e a participação da própria falida e de Mpar Participações S.A. no capital de uma delas, Multi Mix

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNj:.0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Comunicação Corporativa Ltda. - ME. Ainda digno de nota é o fato de Lorival Rodrigues, Cyro Santiago Rodrigues e Camila Santiago Rodrigues integrarem a empresa Magazine Sul Representações Ltda. ME.

As 38 empresas em verde-claro são gerenciadas por Camila Santiago Rodrigues. Em sua maioria, são holdings de instituições não-financeiras, atividade típica de blindagem patrimonial. Todas, sem exceção, sediadas em dois dos endereços utilizados pelo M. Grupo tais como referidos na exordial: Av. Magalhães de Castro, 4800, Capital Building, Cidade Jardim, e Av. Brigadeiro Faria Lima, 1912, 8A, Jardim Paulistano, ambas em São Paulo. Dentre elas, a JVL Equity Participações Societárias Ltda., com o fabuloso capital social de R$1.301.098.000,00, sobre a qual se falará mais abaixo.

As 6 empresas em verde-escuro, também comandadas por Camila Santiago Rodrigues, atuam no *"cultivo de outras plantas de lavoura temporária não especificadas anteriormente"*. Dessas, 4 têm como sócias as rés Mineral Agro Participações S.A. e BR. Agroadm Participações S.A., 5 operam na Av. Carlos Gomes, 141, Edifício Antares Center, Conj 311, Auxiliadora, Porto Alegre, e 4 têm o capital social de R$ 7.215.185,00. Outras dessas empresas, a Mineral Agro Participações S.A., que funciona em outro endereço, tem capital social de R$ 477.650.000,00. Não se vislumbra por que motivo se constituíram 6 empresas com o mesmo objeto, sendo 4 delas absolutamente idênticas. A única explicação plausível é a intenção de blindagem patrimonial. Aduza-se que Mineral Agro Participações S.A. e BR.Agroadm Participações S.A., ambas dirigidas por Camila Santiago Rodrigues e Norma Bottosso, são sócias ou acionistas em várias empresas administradas por Lorival Rodrigues.

É no mínimo suspeito que, entre as empresas dos grupos CNE e GGM administradas por Camila, encontrem-se, em meio a capitais sociais de R$ 2.000,00 ou R$10.000,00, duas empresas com capitais sócias enormes, a CNE Participações Societárias Ltda., com R$ 100.008.000,00 e a Globalfinance Participações Ltda., com R$ 100.000.000,00. E ambas contam com a já mencionada JVL Equity Participações Societárias Ltda. como sócias. Ressalta-se na formação dessas empresas a nítida intenção de blindagem patrimonial. O mesmo raciocínio se aplica às empresas EGM comandadas por Lorival Rodrigues e Cyro Santiago Rodrigues.

A única empresa em branco, a TWB Participações S.A. detém participações em várias das rés. Sendo administrada por Cyro Santiago Rodrigues e Camila Santiago Rodrigues,

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169980 87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



representa mais um elemento a vincular as pessoas jurídicas numa unidade de fato.

Por fim, a única empresa em vermelho da tabela, que possui como administradora Norma Bottosso, funciona igualmente no mesmo endereço de várias das demandadas, Av. Carlos Gomes, 141, Edifício Antares Center, Conj 311, Auxiliadora, Porto Alegre. Norma Bottosso figura como administradora em inúmeras empresas demandadas, sempre junto com Camila Santiago Rodrigues. Também atua como procuradora da falida Magazine Incorporações S.A., como se pode ver às fls. 1685/1687 do processo falimentar. A sua proximidade com a família Rodrigues permite deduzir que sua empresa também faz parte do M. Grupo.

Nas empresas de Lorival Rodrigues e Cyro Santiago Rodrigues como nas de Camila Santiago Rodrigues, vemos o mesmo *modus operandi:* inúmeras pessoas jurídicas idênticas, sediadas no mesmos endereços, a maioria com capital modesto, umas poucas com capital gigantesco. Tudo para confundir os credores e buscar a blindagem dos bens do grupo.

Apesar de as empresas muitas vezes apresentarem objetos sociais os mais diversos, não há como afastar integrarem o mesmo grupo econômico, tanto pela identidade e/ou proximidade entre os sócios, como pela localização nos mesmos endereços, via de regra. E o mais importante: a implausibilidade no fato de algumas das empresas nominalmente administradas por Camila terem realmente o capital social estratosférico que consta em seus atos constitutivos. É implausível, primeiro, pela quantidade de empresas administradas por Camila, pessoa relativamente jovem e que dificilmente teria condições de amealhar patrimônio dessa monta. Depois, pelas ligações já apontadas existentes entre as empresas, é lícito supor que todas elas, todas essas pessoas jurídicas, foram criadas sob a batuta de seu pai, Lorival Rodrigues, tendo por objetivo distribuir entre elas o patrimônio do grupo e dificultar a eventual efetivação de sua responsabilidade civil."

Pois bem. Diante da minuciosa explanação feita pela d. Promotora de Justiça, pouco resta a ser acrescentado.

As provas colhidas no curso do processo não deixam margem para dúvidas acerca da existência de conglomerado entre as rés e promiscuidade empresarial entre elas, o que legitima a extensão dos efeitos da falência postulada pela Massa Falida. As alegações contidas na

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169930-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

contestação investem sem êxito contra tais provas e contra a conclusão patente que delas se extrai, deixando as requeridas de produzirem provas em seu favor (inc. II do art. 373 do CPC), mesmo tendo tido à sua disposição todos os meios de prova admitidos pelo direito.

Além disso, foi igualmente demonstrado que a exacerbada ampliação do grupo ocorreu concomitantemente ao esvaziamento patrimonial da falida e que, não obstante o capital social bilionário declarado, o conglomerado de empresas não possui dinheiro em contas bancárias – e tampouco os seus sócios, conforme se constatou às fls. 1273/1277 –, podendo este juízo concluir com certeza que a complexa estrutura empresarial foi criada não apenas com o intuito de desvio e/ou blindagem de patrimônio, mas também para, através de capitais sociais fictícios e da autopromoção do grupo, tomar recursos no mercado financeiro e de particulares, num golpe de proporções incomensuráveis que lesou centenas de clientes, compradores de boa-fé e instituições financeiras, as quais fomentavam as atividades do grupo, como vem se constatando das ações aforadas em face da falida e das demais empresas que integram o conglomerado.

Dessa forma, impõe-se o acolhimento da pretensão a fim de que sejam estendidos às demais empresas do grupo, ora demandadas, os efeitos da falência já decretada.

Por fim, diante da constatação de tratar-se de homônimo do representante legal da falida, acolho o pedido de desistência da ação com relação à empresa individual LORIVAL RODRIGUES, inscrita no CNPJ sob o n.º 19.877.640/0001-02, julgando extinto o feito com relação a esta, forte no art. 485, VIII, do CPC.

Ante o exposto, JULGO PROCEDENTE a presente ação para o fim de confirmar as tutelas antecipadas aqui deferidas e DECRETAR a falência das empresas AGROMAUA PARTICIPAÇÕES LTDA. (CNPJ 05.103.746/0001-51), ALDEIA SHOP INVEST. E PART. SOCIETÁRIAS LTDA. (CNPJ 01.825.372/0001-10), ALLMALLS PARTICIPAÇÕES LTDA. (CNPJ

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169080 87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

25.002.006/0001-29), ATLAS INVESTIMENTS LTDA. (CNPJ 26.142.400/0001-25), BERTOL AEROTAXI LTDA. (CNPJ 00.563.475/0001-96), BR. AGROADM PARTICIPAÇÕES S.A. (CNPJ 21.533.131/0001-04), BRASILWOODS PARTICIPAÇÕES LTDA (CNPJ 25.103.734/0001-27), BRPARK ESTACIONAMENTOS LTDA. (CNPJ 25.025.237/0001-58), CÁPSULA EVENTOS LTDA. (CNPJ 26.165.144/0001-91), CENTERMALL PARTICIPAÇÕES LTDA. (CNPJ 25.001.976/0001-00), CITY HOTÉIS ADMINISTRAÇÃO S.A. (CNPJ 87.398.004/0001-58), CNE ADM PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.610.122/0001-93), CNE CENTRO OESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA (CNPJ 26.742.648/0001-27), CNE CREDIT PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.707/0001-67), CNE EDITORA E GRÁFICA LTDA. (CNPJ 26.865.432/0001-59), CNE FRANQUIAS LTDA. (CNPJ 26.742.658/0001-62), CNE NORDESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.661/0001-86), CNE NORTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.666/0001-09), CNE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.444.700/0001-69), CNE PROPERTIES EMPRESARIAIS IMOBILIÁRIAS LTDA. (CNPJ 26.742.695/0001-70), CNE SUDESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.653/0001-30), CNE SUL PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.715/0001-03), CNETECH PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.742.673/0001-00), CONDOMÍNIO SHOPPING GRAVATAÍ LTDA. (CNPJ 19.409.506/0001-87) DIAMOND PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.444.757/0001-68), DIAMONDMALL PARTICIPAÇÕES LTDA (CNPJ 25.002.046/0001-70), E-GLOBAL MARKETPLACE PART. E ADM. DE SHOPPING CENTER (CNPJ 25.021.274/0001-98), EGM I PARTICIPAÇÕES LTDA.(CNPJ 24.932.078/0001-02), EGM III PARTICIPAÇÕES LTDA. (CNPJ 25.003.910/0001-59), EGM IV PARTICIPAÇÕES LTDA. (CNPJ 24.929.169/0001-99), EGM V PARTICIPAÇÕES LTDA. (CNPJ 24.930.896/0001-76), EGM VI PARTICIPAÇÕES LTDA. (CNPJ 24.928.971/0001-64), EGM VII PARTICIPAÇÕES LTDA. (CNPJ 24.932.062/0001-08), FAZENDA 4R PARTICIPAÇÕES LTDA. (CNPJ 21.512.522/0001-42), FAZENDA GRACIOSA PARTICIPAÇÕES LTDA. (CNPJ 25.103.766/0001-22), FAZENDA JK

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



PARTICIPAÇÕES LTDA. (CNPJ 25.057.796/0001-40), FAZENDA RIBEIRÃO PRETO PARTICIPAÇÕES LTDA. (CNPJ 25.103.901/0001-30), FAZENDA SÃO CARLOS PARTICIPAÇÕES S.A.    (CNPJ    25.057.864/0001-70),    FULLAGRO PARTICIPAÇÕES    LTDA.    (CNPJ    25.103.728/0001-70),    GGP    ADM PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.551.612/0001-66), GGP BH PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.410/0001-05), GGP BSB PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNJ 6.642.845/0001-74), GGP CJ PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.400/0001-70), GGP CWB PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.461/0001-37), GGP FLN PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.417/0001-27), GGP MIA PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.437/0001-06), GGP NY PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.421/0001-95), GGP PARIS PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.641.445/0001-44), GGP SSA PARTICIPAÇÕES    SOCIETÁRIAS    LTDA.    (CNPJ    26.642.851/0001-21), GLOBALFINANCE    PARTICIPAÇÕES    LTDA.    (CNPJ    24.930.863/0001-26), GLOBALMALLS PART. E ADM. DE SHOPPING CENTER S.A. (CNPJ 17.344.362/0001-00), GMALLS EDITORA E DISTRIBUIDORA LTDA. (CNPJ 25.005.410/0001-56), GMTV PARTICIPACOES LTDA. (CNPJ 24.931.691/0001-05), GO MALL ASSESSORIA PARA SHOPPING CENTERS LTDA. (CNPJ 26.137.382/0001-93), GRAVATAÍ SHOP INVEST. E PART. SOCIETÁRIAS LTDA. (CNPJ 12.278.518/0001-70), GROENLÂNDIA PROPERTIES EMPREEND. E PARTICIPAÇÕES S.A. (CNPJ 18.932.513/0001-04), GUEPARDO GLOBAL PROPERTIES PARTICIPAÇÕES LTDA. (CNPJ 26.300.513/0001-01), GUEPARDO TECNOLOGIA E PARTICIPAÇÕES S.A. (CNPJ 25.117.143/0001-09, HAUS MÍDIA E    MERCHANDISING    LTDA.    (CNPJ    26.165.121/0001-87),    IMPERIALE PARTICIPAÇÕES LTDA. (CNPJ 21.466.128/0001-15), IRRBRASIL LTDA. (CNPJ 26.300.524/0001-91), JVL EQUITY PARTICIPAÇÕES SOCIETÁRIAS LTDA.(CNPJ 26.142.394/0001-06), JVL PARTICIPAÇÕES LTDA.    (CNPJ 21.579.717/0001-00), LATAN PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.420.727/0001-11), M. INVEST PLANEJAMENTO E ADMIN. DE SHOPPING CENTER S.A.  (CNPJ 12.294.194/0001-64),    M.    ÁFRICA    PARTICIPACOES    LTDA.    (CNPJ 17.294.987/0001-05),    M.    ÁSIA    PARTICIPAÇÕES    LTDA.    (CNPJ

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



15.070.728/0001-67), M. BLUE PARTICIPAÇÕES LTDA. (CNPJ 18.932.456/0001-55), M. EUROPA PARTICIPAÇÕES LTDA. (CNPJ 15.056.249/0001-96), M. FIT PARTICIPAÇÕES LTDA. (CNPJ 18.968.058/0001-99), M. FORTALEZA PARTICIPAÇÕES LTDA. (CNPJ 21.465.773/0001-13), M. GOLD CENTER PARTICIPAÇÕES LTDA. (CNPJ 17.293.500/0001-61), M. INFINITY PARTICIPAÇÕES LTDA. (CNPJ 18.932.393/0001-37), M. PLAZA PARTICIPAÇÕES SPE LTDA. (CNPJ 21.465.605/0001-28), M. RENTAL PARTICIPAÇÕES LTDA. (CNPJ 19.833.520/0001-0), M. ROYAL PARTICIPAÇÕES SPE LTDA. (CNPJ 21.533.186/0001-14), MAGAZINE SUL REPRESENTAÇÕES LTDA. – ME (CNPJ 08.010.388/0001-13), MINERAÇÃO RIO AZUL LTDA. – ME (CNPJ 76.460.880/0001-40), MINERAL AGRO PARTICIPAÇÕES S.A. (CNPJ 18.932.555/0001-37), MPAR PARTICIPAÇÕES S.A. (CNPJ 19.353.943/0001-26), MULTI MIX COMUNICAÇÃO CORPORATIVA LTDA. – EPP (CNPJ 14.749.405/0001-31), MULTIHOTÉIS PLANEJAMENTO E ADMINISTRAÇÃO DE HOTÉIS S.A. (CNPJ 12.245.721/0001-40), NACIONAL AGRO PARTICIPAÇÕES LTDA. (CNPJ 21.533.165/0001-07), OLIVE FOMENTO CULTURAL LTDA. (CNPJ 26.137.476/0001-62), ONEAGRO PARTICIPAÇÕES LTDA. (CNPJ 25.103.754/0001-06), ONEMALL PARTICIPAÇÕES LTDA. (CNPJ 24.931.649/0001-94), PENÍNSULA PARTICIPAÇÕES SOCIETÁRIAS LTDA. (CNPJ 26.667.572/0001-12), PHOENIX FLORESTA PARTICIPAÇÕES LTDA. (CNPJ 25.070.444/0001-24), SMA PARTICIPAÇÕES LTDA. (CNPJ 21.533.236/0001-63), SUL FORTE SOLUÇÕES IMOBILIÁRIAS LTDA. – ME (CNPJ 08.872.294/0001-53), TOPCOM COMUNICAÇÃO LTDA. (CNPJ 26.137.395/0001-62), TOPMALL PARTICIPAÇÕES LTDA. (CNPJ 24.931.633/0001-81), TRADEMALLS PARTICIPAÇÕES LTDA. (CNPJ 25.002.095/0001-03), TWB PARTICIPAÇÕES S.A. (CNPJ 25.268.180/0001-18), UNIÃO PARTIPAÇÕES LTDA. (CNPJ 21.472.851/0001-07), VILA RICA AGRO PARTIPAÇÕES LTDA. (CNPJ 21.580.628/0001-83), WISH GESTÃO DE TALENTOS LTDA. (CNPJ 26.165.132/0001-67), declarando-a aberta hoje, determinando o que segue:

a) nomeio Administradora Judicial a mesma em atuação na falência da sociedade falida Magazine Incorporações que compõe o grupo

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNP: 0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



econômico, MEDEIROS & MEDEIROS ADMINISTRAÇÃO JUDICIAL, na pessoa dos seus representantes legais – advogados João Adalberto Medeiros Fernandes Júnior, OAB/RS 40.315, e Laurence Bica Medeiros, OAB/RS 56.691 –, devendo a pessoa jurídica ser intimada para firmar termo de compromisso a ser expedido pelo Cartório, com submissão posterior à magistrada signatária;

b) fixo termo legal 27/03/2014, conforme feito nos autos da falência nº 001/1.16.0094668-3;

c) intimem-se os sócios da Falida para que cumpram o disposto no inc. III do art. 99 da Lei 11.101/05, no prazo de cinco dias, apresentando a relação atualizada de credores, bem como para que atendam ao disposto no art. 104 do referido diploma legal, sob pena de crime de desobediência, devendo ser requerida previamente a remessa da relação de credores por e-mail, no formato de texto;

d) fixo o prazo de quinze (15) dias para habilitação dos credores, na forma do §1º do artigo 7º c/c inc. IV do art. 99, ambos da Lei 11.101/05, devendo a Administradora Judicial apresentar a lista de credores para publicação do edital a que alude o §2º do mesmo dispositivo legal. Faça-se constar no edital a ser publicado o endereço profissional da Administradora Judicial para que os credores apresentem as suas divergências;

e) ordeno a suspensão das ações e execuções em tramitação contra a falida, observada a ressalva de que trata o inciso V do artigo 99 da Lei de Falências;

f) proíbo as falidas de praticarem qualquer ato que importe na disposição dos seus bens, não sendo caso de continuação provisória das atividades da sociedade.

g) cumpra o Sr. Escrivão as diligências estabelecidas em Lei, em especial as dispostas nos incs. VIII, X e XIII, bem como no parágrafo único, todos do art. 99 da Lei 11.101/05, procedendo-se as comunicações e intimações de praxe, bem como intimando-se, pela via eletrônica, as

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNJ: 0165980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

fazendas Nacional, Estadual e Municipal para que enviem certidões das dívidas eventualmente existentes em nome das falidas;

h) indique a Administradora Judicial a necessidade de expedição de mandado de lacração e arrecadação de bens à sede da falida;

i) oficie-se à CGJ para fins do Provimento 20/2009, solicitando providências no sentido de ser comunicado aos Registros Imobiliários a decretação da falência da sociedade empresária e a indisponibilidade dos bens do acionista principal pelo prazo de que trata o §1º do art. 82 da Lei 11.101/05, com base nos incisos VI e VII do art. 99 da referida Lei, bem como para que prestem informações acerca da existência de outros bens;

k) nomeio perito contábil ALFEU JARDIM RIEFFEL e leiloeiro NAIO DE FREITAS RAUPP, mesmos profissionais que já atuam na falência principal do grupo econômico;

l) as custas serão pagas oportunamente na categoria extraconcursal, conforme o inc. IV do art. 84 da Lei de Quebras.

m) após emparelhadas as falências, promova a Administradora Judicial a unificação das mesmas em um só processo, visando a promover os pagamentos em apenas uma falência, mediante a consolidação de um só quadro de credores.

PUBLIQUE-SE E REGISTRE-SE.

INTIMEM-SE, inclusive o Ministério Público.

Porto Alegre, 24 de junho de 2019.

Giovana Farenzena,
Juíza de Direito

64-1-001/2019/1443354 - 001/1.17.0112049-7 (CNP 016²²⁰⁸⁰ 87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo
I-52763 - 16 JUN 2020

**Tradução nº I-52763**
**Livro nº 631**
**Folha 2**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

STATE OF RIO GRANDE DO SUL

JUDICIARY BRANCH

JUDICIAL DISTRICT OF PORTO ALEGRE

BUSINESS, CORPORATE REORGANIZATION, AND BANKRUPTCY COURT

Case No.: 001/1.17.0112049-7 (National Council of Justice (CNJ) No.: 0169980-87.2017.8.21.0001)

Type: Ordinary – Others

Claimant: Bankruptcy Estate of Magazine Incorporações S.A.

Respondent: Agromaua Participações LTDA

Aldeia Shop Investimentos e Participações Societárias Ltda

Allmalls Participações LTDA.

Atlas Investiments LTDA

Bertol Aerotáxi Ltda

Bottosso Serviços Administrativos LTDA. – ME

BR.Agroadm Participações Ltda.

Brasilwoods Participações LTDA.

Brpark Estacionamentos LTDA

Cápsula Eventos LTDA

Centermall Participações LTDA.

City Hotéis Administração S.A.

Cne Adm Participações Societárias LTDA.

Cne Centro Oeste Participações Societárias LTDA

Cne Credit Participações Societárias LTDA.

Cne Editora e Gráfica LTDA.

Cne Franquias LTDA.

Cne Nordeste Participações Societárias LTDA.

Cne Norte Participações Societárias LTDA.

Cne Participações Societárias LTDA.

Cne Properties Empresariais Imobiliárias LTDA.

Cne Sudeste Participações Societárias LTDA.

Cne Sul Participações Societárias LTDA

Cnetech Participações Societárias LTDA

Condomínio Shopping Gravataí Ltda

Diamond Participações Societárias LTDA

Tradução nº I-52763
Livro nº 631
Folha 3

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

Diamondmall Participações LTDA.

E-global Marketplace Participações e Administração de Shopping Center

Egm I Participações LTDA

Egm III Participações LTDA.

Egm IV Participações LTDA.

Egm V Participações LTDA

Egm VI Participações LTDA

Egm VII Participações LTDA

Fazenda 4R Participações Ltda.

Fazenda Graciosa Participações LTDA.

Fazenda Jk Participações LTDA

Fazenda Ribeirão Preto Participações LTDA.

Fazenda São Carlos Participações S.A

Fullagro Participações LTDA.

Ggp Adm Participações Societárias LTDA

Ggp Bh Participações Societárias Ltda

Ggp Bsb Participações Societárias LTDA

Ggp Cj Participações Societárias LTDA.

Ggp Cwb Participações Societária LTDA.

Ggp Fln Participações Societárias LTDA.

Ggp Mia Participações Societárias LTDA.

Ggp Ny Participações Societárias LTDA.

Ggp Paris Participações Societárias LTDA.

Ggp Ssa Participações Societárias LTDA

Globalfinance Participações LTDA

Globalmalls Participações e Administração de Shopping Center S.A.

Gmalls Editora e Distribuidora LTDA.

Gmtv Participações LTDA

Go Mall Assessoria Para Shopping Centers LTDA.

Gravataí Shop Investimentos e Participações Societárias Ltda

Groenlândia Properties Empreendimentos e Participações S.A.

Guepardo Global Properties Participações LTDA.

Guepardo Tecnologia e Participações S.A

Haus Mídia e Merchandising LTDA

Imperiale Participações Ltda.

Irrbrasil LTDA

Tradução nº I-52763
Livro nº 631
Folha 4

Sandra Regina Mattos Rudzit

TRADUTORA PÚBLICA

Jvl Equity Participações Societárias LTDA

Jvl Participações LTDA.

Latan Participações Societárias LTDA.

Lorival Rodrigues 5813226010419

M. Invest Planejamento e Administração de Shopping Center S.A.

M. Africa Participações Ltda

M. América Participações Ltda

M. Asia Participações Ltda

M Blue Participações Ltda

M. Continental Participações SPE Ltda

M Europa Participações Ltda

M. Fit Participações Ltda.

M. Fortaleza Participações Ltda.

M Gold Center Participações Ltda

M Infinity Participações Ltda

M. Plaza Participações SPE LTDA.

M. Rental Participações Ltda

M. Royal Participações SPE LTDA.

Magazine Sul Representações Ltda ME

Mineração Rio Azul LTDA -ME

Mineral Agro Participações S/A

MPAR Participações S. A

Multi Mix Comunicação Corporativa LTDA - EPP

Multihotéis Planejamento e Administração de Hotéis S.A

Nacional Agro Participações Ltda.

Olive Fomento Cultural LTDA

Oneagro Participações LTDA.

Onemall Participações LTDA.

Península Participações Societárias LTDA.

Phoenix Floresta Participações LTDA.

Sma Participações LTDA.

Sul Forte Soluções Imobiliárias Ltda - Me

Topcom Comunicação LTDA.

Topmall Participações LTDA.

Trademalls Participações LTDA.

Twb Participações S.A.

União Participações Ltda.

Vila Rica Agro Participações Ltda.

Wish Gestão de Talentos LTDA.

Trial Judge: Judge Giovana Farenzena, Esq.

Date: June 24, 2019

HAVING SEEN THE CASE RECORDS:

This is an ordinary action seeking to extend the effects of the bankruptcy petition filed by the BANKRUPTCY ESTATE OF MAGAZINE INCORPORAÇÕES S.A. against AGROMAUA PARTICIPAÇÕES LTDA. *ET AL.* The claimant stated, in summary, that the debtor operated as a business group that styled itself the M. GROUP and encompassed over one hundred companies – including the respondents in this case – operating in different industries, all of them incorporated by Lorival Rodrigues and his family. It stated that the business group was created for the purpose of allowing a merger and concealment of assets, culminating in a scheme designed to defraud consumers and the entire society of Rio Grande do Sul through extravagant projects and investment promises which never materialized or otherwise served to create fake share capitals in order to raise funds in the financial market and from individuals. It alleged that the debtor's bankruptcy itself was preceded by a plan for prior diversion of assets and that, from one year to the next, the company's assets went from R$148,000,00.00 (sic) (2013) to R$0.00 (2014). It added that the web of companies is marked by presenting itself to the market, to the press, and to society under the "M. GROUP" brand, having discussed in detail the business group and stressed that all the companies are linked by kinship and affinity relationships among the members of their respective corporate boards, with headquarters located at identical addresses and with the same contact telephone numbers. It also submitted documents (p. 52-1006).

In decision of p. 1007-1008 (back), the request for urgent relief was granted in part, ordering the freezing of assets and monies existing in bank accounts and the recording of a restriction on vehicles found in the name of the respondents and their partners. However, after the search and freezing through the Bacenjud and Renajud systems were conducted, all that could be frozen in the name of the respondents (half of which did not even have a bank account) was an insignificant sum and a few vehicles. Accordingly, the case records were sent to the Office of the 3rd Prosecutor of the Specialized Bankruptcy Prosecutors' Office for his information and adoption of any measures that might be applicable.

In view of a request filed by the claimant Bankruptcy Estate on p. 1099-1106, and in light of the documentation attached thereto, the court issued the order on p. 1272-1272 (back) extending the effects of the preliminary decision and ordering the total freezing of FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES ATLANTIS (National Corporate Taxpayers Register (CNPJ) No. 15.734.351/0001-01).

Notwithstanding the negative return of the return receipts (ARs) of service of process, the respondents, with the exception of respondent BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA., spontaneously appeared before the court by submitting a joint answer on p. 1377-1395, in which they alleged, in summary, that, due to the economic slowdown in the first quarter of 2014, debtor Magazine Incorporações did not carry out new launches and, although its largest project, the Majestic Building had been approved, it was interdicted, generating contract terminations in an amount equivalent to R$14,000,000.00, which was the reason for its non-completion. They listed the projects completed and delivered by the debtor. They argued about the corporate organization of the companies and that they do not qualify as a business group, as there is no common direction. Finally, they requested that the claim be denied and argued that the bankruptcy proceeding is already extensively secured by sufficient assets to secure the performance of all obligations of the Bankruptcy Estate. They also submitted documents (p. 1396-2632).

A reply was submitted on p. 2814-2827.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-52763
Livro nº 631
Folha 6

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

Upon being served with process co-respondent BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. and its owner NORMA BOTOSSO (not listed as a respondent) also submitted an answer alleging their lack of standing to be sued, given that such legal entity was created solely to provide legal services to the M. GROUP.

A reply to such answer was also submitted on p. 4193-4207.

On p. 4267-4273, the court was advised that the interlocutory appeal filed by BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. had been granted, ordering the release of monies deposited in a savings account held by the appellant up to the limit of forty (40) times the minimum salary, in accordance with the provisions of art. 833, X of the Code of Civil Procedure (CPC), which was fulfilled on p. 4274-4383.

A pretrial order was issued on p. 4362-4363, summoning the parties to inform whether they had any other evidence to produce.

An evidentiary hearing was held on October 1, 2018 (p. 4616/4634), at which LORIVAL RODRIGUES and NORMA BOTOSSO testified, and 3 witnesses were cross-examined. After that, the court declared the stage of production of evidence closed and granted time for submission of the parties' final statements.

Final statements were submitted by the Bankruptcy Estate on p. 4663-4675; by respondent BOTOSSO SERVIÇOS ADMINISTRATIVOS LTDA., on p. 4676/4687; by respondent JVL PARTICIPAÇÕES SOCIETÁRIAS LTDA. on p. 4688-4702; and by respondents ATLAS INVESTIMENTOS LTDA., PENÍNSULA PARTICIPAÇÕES SOCIETÁRIAS LTDA., and GGP MIA PARTICIPAÇÕES SOCIETÁRIAS LTDA. on p. 4703-4722.

The case records were sent to the Public Prosecutors' Office (MP), which issued its final opinion on p. 4724-4730, arguing that the claim should be fully granted.

The case records were sent to me under advisement.

THIS IS THE REPORT. I PROCEED TO DECIDE.

This is a request for extension of the effects of the bankruptcy petition filed by the BANKRUPTCY ESTATE OF MAGAZINE INCORPORAÇÕES S.A. against AGROMAUÁ PARTICIPAÇÕES LTDA. AND OTHER 104 COMPANIES, which, as argued by the claimant, comprised, together with the bankrupt company, a group known as the "M. GROUP."

In the merits, I will say from the outset that the claim is valid.

Indeed, the complaint already attached extensive documentation evidencing the close link that exists between the companies at issue, as can be objectively seen in the following situations:

1) Although the companies' businesses were diverse, they were all carried out under a common direction, as widely disclosed on www.mgrupo.com.br (p. 62-71) and in the press (p. 72-91);

2) The shareholding was concentrated in 5 individuals (i.e. LORIVAL RODRIGUES, TANIA RODRIGUES, CYRO SANTIAGO RODRIGUES, CAMILA SANTIAGO RODRIGUES, and NORMA BOTOSSO), 4 of whom were members of the same family (father, mother, and two children); and

3) The use of the same registered addresses and of the same contact telephone numbers, all according to with the certificates of registration and status with the National Corporate Taxpayers Register (CNPJ), capital structures, and articles of association that were likewise attached to the complaint.

In addition, it was also demonstrated that most of the respondents were incorporated in or after 2013 (p. 34-37), and many of them were even incorporated on the same day, which exactly coincides with the time when lawsuits against companies belonging to the business group at issue began to multiply (p. 115-495). That was also the year in which there were drastic changes in the debtor's accounts within a very short period of time (i.e. its assets decreased from R$148 million in 2013 to R$0.00 in 2014, according to its Corporate Income Tax Return (DIPJ) on p. 496-568).

Tradução nº I-52763
Livro nº 631
Folha 7

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

On the other hand, it was found that the group and the share capital of the subsidiaries and affiliates grew exponentially, adding up to a significant amount of R$2 billion, all of which has been duly demonstrated in these case records and result in sufficient evidence in support of the allegations that there was a concerted action, in flagrant deviation from purpose, to defraud clients and creditors through merger and concealment of assets.

This is precisely the reason why the provisional remedies preliminarily requested were granted, including the freezing of any monies found in the respondents' accounts. However, to the surprise of the undersigned, it was only possible to freeze ridiculously small sums (p. 1020-1028), despite the significant number of respondents in this case (more than a hundred) and the fact that some of them have a million-worth share capital registered with government agencies.

The progress of the proceeding, in turn, only corroborated the arguments advanced in the complaint. At this point, it is useful to transcribe the considerations advanced by the representative of the Public Prosecutors' Office in her final opinion, which, together with the table on p. 4727-4730, demonstrate in a clear, organized, and synthetic way the setup of the alleged business group and the peculiarities found with respect thereto, which indicate the occurrence of the deviation from purpose and merger of assets that gave rise to the filing of this action:

"The 31 companies marked in orange have a real estate-related business purpose and are managed by Lorival Rodrigues, whether or not assisted by his son Cyro Santiago Rodrigues. Two of them, i.e. M. América Participações Ltda. and M. Continental Participações Spe Ltda., have Magazine Incorporações S.A. as a partner. There can be no doubt that they are both part of the M. Group, not least because that is what can be inferred from the deposition of Lorival Rodrigues in court.

Of the 11 companies in dark blue, 9 have "*forestry production support activities*" as their business purpose.; All of them are managed by Lorival Rodrigues and Cyro Santiago Rodrigues and have a share capital of R$5,000.00 and address at Av. Brigadeiro Faria Lima, 1912, Jardim Paulistano, São Paulo. On top of that, respondents Mineral Agro Participações SA, BR.Agroadm Participações S.A. and/or M. Invest Planejamento e Administração de Shopping Center S.A. are partners or shareholders of all of them, the first two being managed by Camila Santiago Rodrigues and Norma Bottosso and the last by Lorival Rodrigues and Cyro Santiago Rodrigues.

The other 2 companies in dark blue, i.e. Imperiale Participações Ltda. and União Participações Ltda., are engaged in the "*cultivation of other temporary crop plants not previously specified*," with Lorival Rodrigues as manager and, again, Mineral Agro Participações S.A. and BR. Agroadm Participações S.A. as partners. These circumstances, as well as the fact that they are headquartered at AV. Carlos Gomes, 141, Edifício Antares Center, Conj. 311, Auxiliadora, Porto Alegre, indicate that they are part of the group, despite their different business purpose.

Continuing, we have the 13 companies marked in light blue. Lorival Rodrigues and Cyro Santiago Rodrigues are at the head of all of them. Their various business purposes should not mislead us as to the inclusion of such legal entities in the M. Group, which is evident. Their addresses and owners cannot lead to a different conclusion: they are all members of the business group as argued in the complaint. This is corroborated by the fact that M. Invest Planejamento e Administração de Shopping Center S.A. and Globalmalls Participação e Administração de Shopping Center S.A. (both marked in orange in the table) hold interests in the share capital of 10 of these companies, and both the debtor itself and Mpar Participações S.A. hold interests in the capital of one of them, i.e. Multi Mix Comunicação Corporativa Ltda. – ME. It is also worth noting that Lorival Rodrigues, Cyro Santiago Rodrigues, and Camila Santiago Rodrigues are all partners of Magazine Sul Representações Ltda. ME.

The 38 companies in light green are all managed by Camila Santiago Rodrigues. Most of them are holding companies of non-financial institutions, a typical asset shielding activity. All, without exception, are headquartered at two of the addresses used by the M. Group as mentioned in the complaint: Av. Magalhães de Castro, 4800, Capital Building, Cidade Jardim, and Av. Brigadeiro Faria Lima, 1912, 8A, Jardim Paulistano, both in São Paulo. One of them is JVL Equity Participações Societárias Ltda., with a fabulous share capital of R$1,301,098,000.00, which will be discussed below.

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-52763
Livro nº 631
Folha 8

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

The 6 companies in dark green, also led by Camila Santiago Rodrigues, are engaged in "*cultivation of other temporary crop plants not previously specified.*" Of these, 4 have as their partners respondents Mineral Agro Participações S.A. and BR. Agroadm Participações S.A.; 5 operate at Av. Carlos Gomes, 141, Edifício Antares Center, Conj. 311, Auxiliadora, Porto Alegre; and 4 have a share capital of R$7,215,185.00. Another of these companies, Mineral Agro Participações S.A., which operates at a different address, has a share capital of R$477,650,000.00. It is not clear why 6 companies were incorporated with the same business purpose, 4 of which are absolutely identical. The only plausible explanation is the intent to shield assets. It should be added that Mineral Agro Participações S.A. and BR.Agroadm Participações S.A., both of which are managed by Camila Santiago Rodrigues and Norma Bottosso, are partners or shareholders of several companies managed by Lorival Rodrigues.

It is at least suspicious that, among the companies of the CNE and GGM groups managed by Camila, there are, in the midst of share capitals of R$2,000.00 or R$10,000.00, two companies with a huge share capital: CNE Participações Societárias Ltda., with R$100,008,000.00 and Globalfinance Participações Ltda., with R$100,000,000.00. Also, both of them have the aforementioned JVL Equity Participações Societárias Ltda. as a partner. The incorporation of such companies clearly shows the intent to shield assets. The same rationale applies to the EGM companies led by Lorival Rodrigues and Cyro Santiago Rodrigues.

The sole company in white, TWB Participações S.A., holds interests in several of the respondents. It is managed by Cyro Santiago Rodrigues and Camila Santiago Rodrigues, which is another element to connect all the legal entities as one *de facto* unit.

Finally, the only company in red on the table, which is managed by Norma Bottosso, likewise operates at the same address as several of the respondent, i.e. Av. Carlos Gomes, 141, Edifício Antares Center, Conj. 311, Auxiliadora, Porto Alegre. Norma Bottosso appears as a manager of numerous respondents, always together with Camila Santiago Rodrigues. She is also an attorney-in-fact for debtor Magazine Incorporações S.A., as seen on p. 1685-1687 of the bankruptcy case. Her closeness to the Rodrigues family affords the conclusion that her company is also part of the M. Group.

We see the same modus operandi both in Lorival Rodrigues's and Cyro Santiago Rodrigues's companies and in Camila Santiago Rodrigues's companies: numerous identical legal entities headquartered at the same addresses, most with a modest capital, but a few with a gigantic capital – all to confuse creditors and attempt to shield the group's assets.

Although the business purposes of the companies are often quite different, there is no question that they are members of the same business group, both because of the identity and/or closeness between their partners and because of their location, as a rule, at the same addresses. And, more importantly, it is implausible that some of the companies nominally managed by Camila actually have the stratospheric share capital that appears in their corporate documents. This is implausible, first, due to the number of companies managed by Camila, a relatively young person who would hardly be able to accumulate that amount of assets. Second, given the already mentioned links that exist between the companies, it is reasonable to assume that all these legal entities were created under the baton of her father Lorival Rodrigues for the purpose of distributing the group's assets among them and protecting it from civil liability."

There is little to add to the detailed explanation provided by the hon. Prosecutor.

The evidence gathered in the course of the proceedings leaves no room for doubting the existence of a group among the respondents and corporate promiscuity among them, which affords the extension of the effects of bankruptcy sought by the Bankruptcy Estate. The allegations contained in the answer are an unsuccessful attempt to rebut such evidence and the patent conclusion that can be drawn from it. Thus, the respondents failed to produce evidence in their favor (art. 373, item II of the Code of Civil Procedure (CPC)), even though they had all the means of evidence permitted by law at their disposal.

In addition, it has also been demonstrated that the exacerbated expansion of the group occurred concurrently with the depletion of the assets of the debtor and that, despite the declared billion-worth share capital, neither the business group nor its members, as seen on p. 1273-1277, have cash in bank

Tradução nº I-52763
Livro nº 631
Folha 9

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

accounts. Accordingly, this court is able to conclude with certainty that the complex business structure was created not only with the intent to divert and/or shield assets, but also, through fictitious share capitals and the self-promotion of the group, to raise funds in the financial market and from individuals, in a scheme of immeasurable proportions that has harmed hundreds of clients, buyers in good faith, and financial institutions that fomented the group's operations, as has been seen in lawsuits against the debtor and other group companies.

Thus, the claim should be granted in order to extend the effects of the bankruptcy already decreed to the other group companies.

Finally, given the finding that it is a namesake of the bankrupt company's legal representative, I grant the motion for dropping the case against sole proprietorship LORIVAL RODRIGUES, enrolled with the National Corporate Taxpayers Register (CNPJ) under No. 19.877.640/0001-02, and I dismiss the case with respect to the latter under art. 485, VIII of the Code of Civil Procedure (CPC).

Wherefore, I GRANT the claim in order to confirm the early reliefs granted in this case and I ADJUDICATE the following companies bankrupt: AGROMAUA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 05.103.746/0001-51), ALDEIA SHOP INVEST. E PART. SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 01.825.372/0001-10), ALLMALLS PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.002.006/0001-29), ATLAS INVESTIMENTS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.142.400/0001-25), BERTOL AEROTAXI LTDA. (National Corporate Taxpayers Register (CNPJ) No. 00.563.475/0001-96), BR. AGROADM PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 21.533.131/0001-04), BRASILWOODS PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.103.734/0001-27), BRPARK ESTACIONAMENTOS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.025.237/0001-58), CÁPSULA EVENTOS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.165.144/0001-91), CENTERMALL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.001.976/0001-00), CITY HOTÉIS ADMINISTRAÇÃO S.A. (National Corporate Taxpayers Register (CNPJ) No. 87.398.004/0001-58), CNE ADM PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.610.122/0001-93), CNE CENTRO OESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.648/0001-27), CNE CREDIT PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.707/0001-67), CNE EDITORA E GRÁFICA LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.865.432/0001-59), CNE FRANQUIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.658/0001-62), CNE NORDESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.661/0001-86), CNE NORTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.666/0001-09), CNE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.444.700/0001-69), CNE PROPERTIES EMPRESARIAIS IMOBILIÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.695/0001-70), CNE SUDESTE PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.653/0001-30), CNE SUL PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.715/0001-03), CNETECH PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.742.673/0001-00), CONDOMÍNIO SHOPPING GRAVATAÍ LTDA. (National Corporate Taxpayers Register (CNPJ) No. 19.409.506/0001-87) DIAMOND PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.444.757/0001-68), DIAMONDMALL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.002.046/0001-70), E-GLOBAL MARKETPLACE PART. E ADM. DE SHOPPING CENTER (National Corporate Taxpayers Register (CNPJ) No. 25.021.274/0001-98), EGM I PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.932.078/0001-02), EGM III PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.003.910/0001-59), EGM IV PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.929.169/0001-99), EGM V PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.930.896/0001 76), EGM VI PARTICIPAÇÕES LTDA.

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

(National Corporate Taxpayers Register (CNPJ) No. 24.928.971/0001-64), EGM VII PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.932.062/0001-08), FAZENDA 4R PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.512.522/0001-42), FAZENDA GRACIOSA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.103.766/0001-22), FAZENDA JK PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.057.796/0001-40), FAZENDA RIBEIRÃO PRETO PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.103.901/0001-30), FAZENDA SÃO CARLOS PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 25.057.864/0001-70), FULLAGRO PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.103.728/0001-70), GGP ADM PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.551.612/0001-66), GGP BH PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.410/0001-05), GGP BSB PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Council of Justice (CNJ) 6.642.845/0001-74), GGP CJ PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.400/0001-70), GGP CWB PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.461/0001-37), GGP FLN PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.417/0001-27), GGP MIA PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.437/0001-06), GGP NY PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.421/0001-95), GGP PARIS PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.641.445/0001-44), GGP SSA PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.642.851/0001-21) GLOBALFINANCE PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.930.863/0001-26) GLOBALMALLS PART. E ADM. DE SHOPPING CENTER S.A. (National Corporate Taxpayers Register (CNPJ) No. 17.344.362/0001-00), GMALLS EDITORA E DISTRIBUIDORA LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.005.410/0001-56), GMTV PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.931.691/0001 05), GO MALL ASSESSORIA PARA SHOPPING CENTERS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.137.382/0001-93), GRAVATAÍ SHOP INVEST. E PART. SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 12.278.518/0001-70), GROENLÂNDIA PROPERTIES EMPREEND. PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 18.932.513/0001-04), GUEPARDO GLOBAL PROPERTIES PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.300.513/0001-01), GUEPARDO TECNOLOGIA E PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 25.117.143/0001-09, HAUS MÍDIA E MERCHANDISING LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.165.121/0001-87), IMPERIALE PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.466.128/0001-15), IRRBRASIL LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.300.524/0001-91), JVL EQUITY PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.142.394/0001-06), JVL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.579.717/0001-00), LATAN PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.420.727/0001-11), M. INVEST PLANEJAMENTO E ADMIN. DE SHOPPING CENTER S.A. (National Corporate Taxpayers Register (CNPJ) No. 12.294.194/0001-64), M. ÁFRICA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No.) 17.294.987/0001-05), M. ÁSIA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 15.070.728/0001-67), M. BLUE PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 18.932.456/0001-55), M. EUROPA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 15.056.249/0001-96), M. FIT PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 18.968.058/0001-99), M. FORTALEZA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.465.773/0001-13), GOLD CENTER PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 17.293.500/0001-61), M. INFINITY PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 18.932.393/0001-37), M. PLAZA PARTICIPAÇÕES SPE



Tradução nº I-52763
Livro nº 631
Folha 11

*TRADUTORA PÚBLICA*

LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.465.605/0001 28), M. RENTAL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 19.833.520/0001-0), M. ROYAL PARTICIPAÇÕES SPE LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.533.186/0001-14), MAGAZINE SUL REPRESENTAÇÕES LTDA. – ME (National Corporate Taxpayers Register (CNPJ) No. 08.010.388/0001-13), MINERAÇÃO RIO AZUL LTDA. – ME (National Corporate Taxpayers Register (CNPJ) No. 76.460.880/0001-40), MINERAL AGRO PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 18.932.555/0001-37), MPAR PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 19.353.943/0001-26), MULTI MIX COMUNICAÇÃO CORPORATIVA LTDA. – EPP (National Corporate Taxpayers Register (CNPJ) No. 14.749.405/0001-31), MULTIHOTÉIS PLANEJAMENTO E ADMINISTRAÇÃO DE HOTÉIS S.A. (National Corporate Taxpayers Register (CNPJ) No. 12.245.721/0001-40), NACIONAL AGRO PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.533.165/0001-07), OLIVE FOMENTO CULTURAL LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.137.476/0001-62), ONEAGRO PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.103.754/0001-06), ONEMALL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.931.649/0001-94), PENÍNSULA PARTICIPAÇÕES SOCIETÁRIAS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.667.572/0001-12), PHOENIX FLORESTA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.070.444/0001-24), SMA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.533.236/0001-63), SUL FORTE SOLUÇÕES IMOBILIÁRIAS LTDA. – ME (National Corporate Taxpayers Register (CNPJ) No. 08.872.294/0001-53), TOPCOM COMUNICAÇÃO LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.137.395/0001-62, TOPMALL PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 24.931.633/0001-81), TRADEMALLS PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.002.095/0001-03), TWB PARTICIPAÇÕES S.A. (National Corporate Taxpayers Register (CNPJ) No. 25.268.180/0001-18) UNIÃO PARTIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.472.851/0001-07), VILA RICA AGRO PARTIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 21.580.628/0001-83), and WISH GESTÃO DE TALENTOS LTDA. (National Corporate Taxpayers Register (CNPJ) No. 26.165.132/0001-67) as of the date hereof, and I further order the following:

a) I appoint the same Judicial Administrator already in charge of the bankruptcy of debtor and business group member Magazine Incorporações, i.e. MEDEIROS & MEDEIROS ADMINISTRAÇÃO JUDICIAL, as represented by its legal representatives, i.e. attorneys-at-law João Adalberto Medeiros Fernandes Júnior, Brazilian Bar Association/Rio Grande do Sul Chapter (OAB/RS) No. 40.315, and Laurence Bica Medeiros, Brazilian Bar Association/Rio Grande do Sul Chapter (OAB/RS) No. 56.691. Let such legal entity be summoned to sign an oath of office, to be issued by the Clerk and subsequently submitted to the undersigned judge;

b) I establish March 27, 2014 as the effective date of the pre-bankruptcy period, as done in the case records of bankruptcy No. 001/1.16.0094668-3;

c) I order that the partners of the Bankrupt Company be summoned to comply with the provisions of art. 99, item III of Law No. 11.101/05, within five days, by submitting an updated list of creditors, as well as to comply with the provisions of art. 104 of the same statute, under penalty of contempt. The list of creditors must be previously sent by email in text format;

d) I grant fifteen (15) days for submission of proofs of claim, in accordance with the provisions of article 7, paragraph 1, together with art. 99, item IV, both of Law No. 11.101/05, and I order the Judicial Administrator to submit a list of creditors for publication of the public notice referred to in paragraph 2 of the same statute. The public notice to be published must contain the business address of the Judicial Administrator for creditors to submit their objections;

e) I order the stay of any actions and executions pending against the debtor, subject to the proviso set forth in article 99, item V of the Bankruptcy Law;

f) I enjoin the debtors from taking any action that implies a disposal of their assets, except in the event



Tradução nº I-52763
Livro nº 631
Folha 12

*TRADUTORA PÚBLICA*

of provisional continuation of the company's operations;

g) I order the Clerk to take the measures set forth in Law, particularly in art. 99, items VIII, X, and XIII and sole paragraph of Law No. 11.101/05, by serving the customary notices and summons, by electronic means, to the Federal, State, and Municipal treasuries requesting them to send certificates of any debts existing in the name of the debtors;

h) I summon the Judicial Administrator to indicate whether the issuance of a warrant for sealing and collection of assets at the headquarters of the debtor is necessary;

i) I order the issuance of an official letter to the Disciplinary Board of Justice (CGJ) for the purposes of Administrative Act No. 20/2009, requesting measures for advising Real Estate Registries of the adjudication of bankruptcy of the company and of the freezing of the assets of its main shareholder for the period set forth in art. 82, paragraph 1 of Law No. 11.101/05, based on art. 99, items VI and VII of such Law, as well as requesting them to provide information on the existence of other assets;

k) I appoint ALFEU JARDIM RIEFFEL as forensic accountant and NAIO DE FREITAS RAUPP as auctioneer, both of whom are the same professionals already acting in the main bankruptcy of the business group;

l) The court costs are to be paid in due time under the non-bankruptcy category, in accordance with the provisions of art. 84, item IV of the Bankruptcy Law; and

m) I order the Judicial Administrator, after the pairing of the bankruptcy proceedings, to join all of them in a single case so that the payments can be made in a single bankruptcy case upon consolidation a single list of creditors.

PUBLISH AND REGISTER.

NOTIFY, including the Public Prosecutors' Office.

Porto Alegre, June 24, 2019.

(sgd)

Giovana Farenzena,

Judge

64-1-001/2019/1443354 – 001/1.17.0112049-7 (National Council of Justice (CNJ) No. 0169980 87.2017.8.21.0001)

Stamp: "Judiciary Branch – State of Rio Grande do Sul".

Pages initialed.

*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, June 16, 2020*

*Receipt No. 23210*

pas/229382.doc

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública





ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

001/1.17.0112049-7 (CNJ:.0169980-87.2017.8.21.0001)

Vistos.

1. Tendo constatado a ocorrência do erro material apontado às fls. 4768/4778, retifico-o, de plano, para o fim de incluir no dispositivo da sentença de fls. 4732/4747 as rés que, por um lapso, acabaram não constando no mesmo, quais sejam: BOTTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. – ME (CNPJ 15.449.201/0001-48), M. AMÉRICA PARTICIPAÇÕES LTDA. (CNPJ 15.056.121/0001-22), M. CONTINENTAL PARTICIPAÇÕES SPE LTDA. (CNPJ 17.295.006/0001-36) e GMCARD PARTICIPAÇÕES LTDA. (CNPJ 25.002.132/0001-83).

A presente decisão passa a fazer parte integrante da sentença.

2. Diante dos endereços informados nos itens "3.1" e "3.2" das fls. 4770/4777, expeçam-se os mandados de lacração para os locais ali indicados, como requerido, autorizada a adoção da medida sugerida no item "4.b" da fl. 4777, caso a mesma imprima eficiência e economia ao cumprimento do ato.

3. Intimem-se os peticionantes de fls. 4748/4749 para que comprovem que cientificaram os mandantes acerca da renúncia ali noticiada (art. 112, *caput*, do CPC).

4. Por fim, considerando o pedido versado nos embargos declaratórios de fls. 4780/4786, cujo acolhimento poderá implicar a modificação da decisão embargada, necessário que se oportunize o contraditório, na forma do que prescreve o § 2º do art. 1.023 do CPC.

Assim, intime-se a parte embargada (autora) para que se manifeste com relação ao mérito do recurso, querendo, no prazo de 5 dias.

Intimem-se.

Publique-se juntamente com a sentença de fls. 4732/4747.

001/1.17.0112049-7 (CNJ:.0169980-87.2017.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Após, ao Ministério Público.

Porto Alegre, 15/07/2019.


Giovana Farenzena,
Juíza de Direito.

001/1.17.0112049-7 (CNJ:.0169980-87.2017.8.21.0001)

2

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

I-52764 - 16 JUN 2020



Tradução nº I-52764
Livro nº 631
Folha 13

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## STATE OF RIO GRANDE DO SOL

JUDICIARY BRANCH

### 001/1.17.0112049-7 (CNJ:.0169980-87.2017.8.21.0001)

Having seen the case records:

1. Upon finding a clerical error on p. 4768-4778, I immediately rectify it in order to include, in the conclusion of the judgment on p. 4732-4747, the following respondents, which were not included therein by mistake: BOTTOSSO SERVIÇOS ADMINISTRATIVOS LTDA. – ME (National Corporate Taxpayers Register (CNPJ) No. 15.449.201/0001-48), M. AMÉRICA PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 15.056.121/0001-22), M. CONTINENTAL PARTICIPAÇÕES SPE LTDA. (National Corporate Taxpayers Register (CNPJ) No. 17.295.006/0001-36), and GMCARD PARTICIPAÇÕES LTDA. (National Corporate Taxpayers Register (CNPJ) No. 25.002.132/0001-83).

This order is an integral part of the judgment.

2. Given the addresses informed in items "3.1" and "3.2" of p. 4770-4777, I order the issuance of sealing warrants for the locations indicated therein as requested and I authorize the taking of the measure suggested in item "4.b" of p. 4777 in case the same provides savings in the performance of such action.

3. I order that the petitioners on p. 4748-4749 be summoned to prove that they have notified their principals of the waiver stated therein (main provision of art. 112 of the Code of Civil Procedure (CPC)).

4. Finally, in view of the request contained in the motion for clarification on p. 4780-4786, the granting of which may result in modification of the underlying decision, it is necessary to provide the party with an opportunity to be heard, in accordance with the provisions of art. 1.023, paragraph 2 of the Code of Civil Procedure (CPC)).

Thus, notify the appellee (claimant) to respond, if it so wishes, with respect to the merits of the motion within 5 days.

Notify.

Publish together with the judgment on p. 4732-4747.

After that, send the case records to the Public Prosecutors' Office.

Porto Alegre, July 15, 2019.

(sgd)

Giovana Farenzena,

Judge.

001/1.17.0112049-7 (National Council of Justice (CNJ) No.: 0169980-87.2017.8.21.0001)

Stamp: "Judiciary Branch – State of Rio Grande do Sul".

Pages initialed.

*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, June 16, 2020*

*Receipt No. 23210*

pas/229383.doc

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

# **<u>EXHIBIT 1(C)</u>**



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



**001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)**

Vistos.

(1) Primeira parte da decisão.

Preambularmente, a anteceder a continuidade do presente processo de falência, entendo pertinente a substituição do Administrador Judicial originariamente nomeado.

Com efeito, quando decretei a falência da empresa Magazine Incorporações S/A, em 10 de Fevereiro de 2017 (fls. 306/309vº), nomeei para atuação como Administrador Judicial o advogado Marcelo Machado Bertolucci, OAB/RS 36.581, profissional da advocacia amplamente conhecido nesta vara especializada em Direito Concursal pela excelência dos serviços prestados nos processos em que atua.

Em sua primeira manifestação nos autos, a qual data de 06 de Março de 2017 – fls. 381/391, ou seja, quase um mês após a intimação acerca da nomeação (fl. 314), o Administrador Judicial requereu a contratação de diversos profissionais para auxílio no desempenho do encargo, dentre eles a empresa especializada Medeiros & Medeiros Administração Judicial. Além de tal empresa especializada, solicitou o Administrador Judicial autorização para contratar bancas especializadas em direito civil, trabalhista, empresarial e tributário a fim de promover a defesa da Massa Falida nas mais diversas frentes.

Às fls. 548/550 houve o indeferimento das contratações pleiteadas pelo Administrador. Posteriormente, em razão do pedido de reconsideração veiculado pelo mesmo às fls. 574/576, houve a autorização para contratação de alguns profissionais a fim de auxiliar o titular da administração judicial no desempenho do encargo para o qual foi nomeado.

001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo





ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO

Na sequência dos acontecimentos, tem-se que o decreto de quebra foi suspenso por decisão liminar proferida no bojo do Agravo de Instrumento nº 70073103657, sendo que, em 12 de Junho de 2017 (fl. 714), o efeito suspensivo anteriormente agregado a tal recurso foi retirado pelo Exmo. Sr. Des. Relator do recurso, impondo-se, desde então, a continuidade do processo falimentar.

Juntada aos autos a decisão referida no parágrafo supra, o presente processo veio-me à conclusão, quando então proferi a decisão acostada às fls. 798/798vº, vedando a contratação de quaisquer profissionais para auxiliar o Administrador Judicial no desempenho do encargo, à exceção da Medeiros & Medeiros Administração Judicial, já que, segundo o Administrador Judicial, os honorários dessa pessoa jurídica especializada seriam pagos por ele mesmo, e não pela Massa Falida.

Em 27 de Junho de 2017, o Administrador Judicial originariamente nomeado solicitou carga dos autos (fl. 806), o que foi deferido à fl. 972, por cinco dias, aportando manifestação do mesmo às fls. 977/981.

Pois bem. A certidão acostada à fl. 984 comprova que os autos estiveram em carga com o Administrador Judicial de 03 de Julho a 24 de Julho de 2017, tendo havido, inclusive, publicação de nota de expediente para a cobrança de autos (fl. 975), considerando que o prazo de cinco dias conferido à fl. 972 foi extrapolado.

Em conjunto aos autos, entregou o Administrador Judicial ao juízo a petição acostada às fls. 977/981, na qual postula algumas providências, sem observar, todavia, de forma efetiva, o início dos atos típicos do processo falimentar, pois muito embora as providências solicitadas sejam importantes, sequer o levantamento dos bens da falida veio aos autos até a presente data. Releva notar que tais atos poderiam ser realizados independentemente da carga dos autos, pois são diligências extrajudiciais (administrativas) a serem realizadas pelo próprio Administrador

2

001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001).

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Judicial. Registro, no ponto, que desde a retirada do efeito suspensivo no bojo do Agravo de Instrumento nº 70073103657, o que ocorreu em 12 de Junho do corrente ano, como referi acima, impunha-se o prosseguimento da falência.

Por três vezes no presente processo, o Administrador Judicial requereu a contratação de auxiliares para o desempenho no encargo ao qual foi nomeado – fls. 381/391 e 574/576 já citadas acima, bem como agora, às fls. 977/981, quando novamente postulou autorização para contratação de banca especializada em direito trabalhista à defesa da Massa em ações perante a Justiça do Trabalho, deixando de comprovar, minimamente que seja, a existência de ações trabalhistas contra a Massa. Não obstante todo o tempo em que os autos estiveram em carga com o Administrador Judicial, a petição acostada às fls. 977 e seguintes veio desacompanhada de um documento sequer.

Tanto as reiteradas solicitações para contratação de auxiliares, quanto a extrapolação do tempo da carga dos autos, demonstram a falta de estrutura do Administrador Judicial nomeado originariamente para o desempenho no encargo na presente falência, não obstante a excelência dos serviços que presta em outros processos falimentares no qual atua como Síndico ou Administrador Judicial, como referi no início da presente decisão, sendo fato que merece ser ressaltado. A presente falência engloba um grande grupo econômico e, de fato, o Administrador Judicial deve possuir uma estrutura razoável de trabalho para fazer frente ao encargo e todas as vicissitudes decorrentes do mesmo.

O próprio Administrador Judicial, em sua primeira manifestação nos autos, fls. 381/391, informou que a empresa especializada Medeiros & Medeiros Administração Judicial contém a equipe e a expertise necessárias à atuação no presente processo (fl. 387, item "6.i"). Aliás, a presteza e eficiência do trabalho de tal empresa são conhecidas deste juízo, como constou expressamente na decisão proferida às fls. 548/550.

3

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



Em razão de todo o exposto acima, infere-se com facilidade que a nomeação da Medeiros & Medeiros Administração Judicial é medida salutar ao presente processo e, principalmente, ao concurso de credores instaurado com a presente quebra, pois detém tal empresa os requisitos necessários ao fiel bom desempenho do encargo de Administradora Judicial.

Isso posto, e renovando o juízo agradecimentos ao Administrador Judicial anteriormente nomeado pelos trabalhos até então desempenhados, nomeio em substituição para o encargo de Administradora Judicial na presente falência a empresa especializada Medeiros & Medeiros Administração Judicial, inscrita no CNPJ 24.593.890/0001-50, com sede na Av. Dr. Nilo Peçanha, 2828, sala 701, Boa Vista, Torre Comercial Iguatemi Business, Porto Alegre/RS, CEP 91330-002, na pessoa dos seus representantes legais – advogados João Adalberto Medeiros Fernandes Júnior, OAB/RS 40.315, e Laurence Bica Medeiros, OAB/RS 56.691 –, devendo a pessoa jurídica ser intimada para firmar termo de compromisso a ser expedido pelo Cartório, com submissão posterior à magistrada signatária.

(2) Segunda parte da decisão.

Trazendo o presente processo de falência ao trâmite regular, passo às seguintes decisões e determinações:

a) Esclareça a Administradora Judicial acerca da questão referentes aos leilões dos Shoppings de Gravataí e Lajeado, tal como postulado pelo Ministério Público à fl. 983, devendo trazer aos autos, se necessário for, explicações inclusive por parte do leiloeiro.

b) A questão suscitada às fls. 892/893, com documentos, fica superada por conta do que foi decidido na primeira parte da presente decisão, devendo a advogada signatária de tal petição ser intimada acerca de tal.

4


SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)



ESTADO DO RIO GRANDE DO SUL
PODER JUDICIÁRIO



c) Indefiro o pedido formulado às fls. 634/641, pois a habilitação de créditos no processo falimentar dá-se diretamente junto à Administradora Judicial ou mediante incidente de habilitação de créditos, na forma do §1º do art. 7º e art. 10, ambos da Lei 11.101/2005.

d) No que se refere ao contido às fls. 699/700 e 973, cientifique-se a peticionante de que deverá promover o seu pedido perante o juízo competente – trabalhista –, e não no bojo da falência.

e) Certifique-se acerca da intimação dos sócios determinada no item 'c' do decreto de quebra, fl. 308vº dos autos, intimando-os caso o ato ainda não tenha sido realizado.

f) Em atenção à petição acostada às fls. 915/924, intime-se a Ápice Securitizadora S/A para que, em 10 dias, junte aos autos os contratos que deram ensejo à propriedade fiduciária referida.

Intimem-se, inclusive o Ministério Público.

Com tudo, dê-se vista à Administradora Judicial para prosseguimento do feito, devendo a mesma dizer, na oportunidade, sobre todas as questões pendentes, principalmente acerca de eventuais reclamatórias trabalhistas existentes contra a Massa, comprovando a existência da mesmas, bem como sobre a questão do grupo econômico no qual está envolvida a empresa falida.

Dil.Lg.

Porto Alegre, 26/07/2017.

Giovana Farenzena,
Juíza de Direito.

5

001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo
I-52768 - 16 JUN 2020

**Tradução nº I-52768**
**Livro nº 631**
**Folha 27**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

---

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

---

## STATE OF RIO GRANDE DO SUL

JUDICIAL BRANCH

Stamp of JUDICIAL BRANCH - RS

**001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)**

Case Records Examined

(1) First part of the decision.

Initially, prior to continuation of this bankruptcy proceeding, I consider to be pertinent the replacement of the Judicial Administrator originally appointed.

Indeed, when I decreed the bankruptcy of Magazine Incorporações S/A, on February 10, 2017 (pages 306-309v), I appointed lawyer Marcelo Machado Bertolucci, OAB/RS 36.581, as a Judicial Administrator, a widely-recognized professional in this court specialized in Bankruptcy Law for the excellence of the services provided in the proceedings in which he operates.

In its first submission in the records, dated March 6, 2017, pages 381-391, that is, almost a month after the notice on the appointment (page 314), the Judicial Administrator requested the hiring of several professionals to assist in the performance of the position, among them the specialized company Medeiros & Medeiros Administração Judicial. In addition to such a specialized company, the Judicial Administrator requested authorization to hire a specialized law firm in civil, labor, business and tax law in order to defend the Bankruptcy in the most diverse fronts.

On pages 548-550, the hiring requested by the Judicial Administrator was denied. Subsequently, due to the reconsideration request sent by him on pages 574-576, the contracting of some professionals was authorized in order to assist the holder of the Judicial Administrator in carrying out the task for which he was appointed.

As a result of the events, the bankruptcy decree was stayed by a preliminary decision issued in the context of Interlocutory Appeal No. 70073103657, and on June 12, 2017 (page 714), the stay of proceedings attributed to such appeal was withdrawn by Hon. Reporting Appellate Judge, imposing, thereafter, the continuity of the bankruptcy proceeding.

With the decision attached to the records, referred to in the above paragraph, this case came to my conclusion, when I then handed down the decision attached on pgs. 798-798v, prohibiting the hiring of any professionals to assist the Judicial Administrator in carrying out the task, with the exception of Medeiros & Medeiros Administração Judicial, since, according to the Judicial Administrator, the fees of this specialized legal entity would be paid by himself; and not by the Bankruptcy Estate.

On June 27, 2017, the Judicial Administrator originally appointed requested to examine the case files (page 806), which was granted on page 972, for five days, providing its statement on pgs. 977-981.

The certificate attached on page 984 evidences that the records were in the possession of the Judicial Administrator from July 3 to July 24, 2017, and there was even the publication of a file for the collection of cases (page 975), considering that the term of five days given on pg. 972 was exceeded.

Together with the records, the Judicial Administrator handed over the petition attached on pages 977-981, in which he claims some measures, without, however, observing, in an effective way, the beginning of the typical acts of the bankruptcy proceeding, because although the measures requested are important, the withdrawal of the bankrupt's assets has not occurred in the records up to this date. It should be noted that such acts could be performed regardless of the request for examination of the

**Tradução nº I-52768**
**Livro nº 631**
**Folha 28**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

case, as they are extrajudicial (administrative) steps to be performed by the Judicial Administrator himself. I note, at this point, that as from the withdrawal of the stay of proceedings in Interlocutory Appeal No. 70073103657, which occurred on June 12 of this year, as I mentioned above, it was necessary to continue with the bankruptcy proceeding.

Three times in this case, the Judicial Administrator requested the hiring of assistants for the performance of the task to which it was appointed on pgs. 381-391 and 574-576 already mentioned above, as well as now, on pages 977-981, when it again applied for authorization to hire a firm specialized in labor law to defend the Bankruptcy Estate in lawsuits before the Labor Court, failing to prove, minimally, that there are labor claims against the Bankruptcy Estate. Despite all the time that the records were in the possession of the Judicial Administrator, the petition attached on page 977 et. seq came without a single document.

With so many repeated requests for contracting assistants, and the extent of the time for holding the case files, demonstrates the lack of structure of the Judicial Administrator originally appointed to perform the duties in this bankruptcy, despite the excellence of the services it provides in other bankruptcy proceedings, in which he acts as a Trustee or Judicial Administrator, as I mentioned at the beginning of this decision, a fact that deserves to be highlighted. This bankruptcy encompasses a large economic group and, in fact, the Judicial Administrator shall have a reasonable structure of work to face the duties and all the changes arising from it.

The Judicial Administrator, in its statement in the records, on pages 381-391, informed that the specialized company Medeiros & Medeiros Administração Judicial contains the team and expertise necessary to act in this case (page 387, item "6.i"). In fact, the promptness and efficiency of the work of such a company is known to the court, as stated expressly in the decision handed down on page 548-550.

In view of all the above, it is easy to infer that the appointment of Medeiros & Medeiros Administração Judicial is a salutary measure in this case and, above all, in the proceeding initiated with this bankruptcy, as this company has the necessary requirements for the faithful good performance of the position of Judicial Administrator.

That said, and renewing the judgment, thanks to the Judicial Administrator previously appointed for the work performed thus far, I appoint the substitution for the position of Judicial Administrator in this bankruptcy the company Medeiros & Medeiros Administrador Judicial, enrolled with the National Corporate Taxpayers' Register (CNPJ) under No. 24.593.890/0001-50, headquartered at Av. Dr. Nilo Peçanha, 2828, room 701, Boa Vista, Torre Comercial Iguatemi Business, Porto Alegre/RS, Postal Code 91330-002, in the person of its legal representatives, lawyers João Adalberto Medeiros Fernandes Júnior, OAB/RS 40.315, and Laurence Bica Medeiros, OAB/RS 56.691 -, and the legal entity must be summoned to sign a consent order to be issued by the Court Office, with subsequent submission to the signatory judge.

(2) Second part of the decision.

Bringing this bankruptcy proceeding to the regular procedure, I proceed to the following decisions and determinations:

a) The Judicial Administrator shall clarify the matter related to the auctions of the Gravataí and Lajeado Shopping malls, as requested by the Public Prosecutors' Office on pg. 983, and shall provide explanations in the case records, if necessary, including to the auctioneer.

b) The issue raised on pages 892-893, with the documents, is overcome based on what was decided in the first part of this decision, and the signatory attorney of this petition shall be summoned in regards to it.

c) I deny the request made on pages 634-641, since the proof of claim in the bankruptcy proceeding takes place directly with the Judicial Administrator or through an incident motion of proof of claims, in



**Tradução nº I-52768**
**Livro nº 631**
**Folha 29**

*TRADUTORA PÚBLICA*

the form of paragraph 1 of art. 7 and art. 10, both of Law 11.101/2005.

d) With regard to what is contained on pages 699-700 and 973, the petitioner shall be aware that it must submit its claim before the competent labor court - and not in the midst of the bankruptcy proceeding.

e) Assure as regards the summons of the partners determined in item 'c' pg. 308v of the records of the bankruptcy decree, notifying them if the act has not yet been carried out.

f) In response to the petition attached on pages 915-924, notify Ápice Securitizadora S/A so that, in 10 days, it can attach the contracts that gave rise to the referred fiduciary property in the records.

Notify the Public Prosecutors' Office.

However, the Judicial Administrator shall be given the right to review the records to continue with the case, and let it pronounce on the proper occasion about all pending issues, mainly on any existing labor claims against the Bankruptcy Estate, proving its existence, as well as on the issue of the economic group in which the bankruptcy company is involved.

Dil. Lg.

Porto Alegre, July 26, 2017

(sgd)

Giovana Farenzena,

Judge.

001/1.16.0094668-3 (CNJ:.0145675-73.2016.8.21.0001)
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, June 16, 2020*

*Receipt No. 23210*

jms/229381.doc

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br